887 F.2d 215
 Selwyn A. ROBINSON, Trustee under the Will of Alymer F.
Robinson; Eleanor Robinson, Trustee under the Will of
Aylmer F. Robinson; Bruce R. Robinson, Trustee under the
Will of Aylmer F. Robinson; Russell S. Robinson; Helen M.
Robinson, Individually and as Executrix of the Estate of
Lester B. Robinson; Ruth R. Le Fiell; Marion R. Keat;
Jean R. Weir; Keith P. Y, Plaintiffs-Appellees,
v.
George R. ARIYOSHI, Governor; Ronald Y. Amemiya, Attorney
General; Andrew S.O. Lee; William Y. Thompson; Stanley W.
Hong; Larry E. Mehau; Manuel Moniz, Jr.; Moses W.
Kealoha; Takeo Yamamoto, Chairman and Members, Board of
Land and Natural Resources, State of Hawaii, as succeeded by
John D. Waihee, Governor, State of Hawaii, Warren Price,
III, Attorney General, State of Hawaii, William W. Paty,
John Y. Arisumi, Herbert Y. Arata, J. Douglas Ing, Moses W.
Kealoha and Leonard H. Zalopany, Chairman and Members, Board
of Land and Natural Resources, State of Hawaii, Defendants-Appellants,
v.
McBRYDE SUGAR COMPANY, LTD., Olokele Sugar Company, Ltd.;
Ida Albarado; Helen B. Chu; Henry J. Chu; Chee Kung Fui
Society; Lapaz Francisco; Marcelino Francisco; Albert K.
Kaailua; Linda P. Kaiakapu; Ann N. Kali; Harriet U. Kano;
Junichi Kano; Kiyoshi Kimata; Arnold W.F. Leong;
Katherine A. Leong; Lo Sun D. Leong; Tai Hung Leong;
Hanayo T. Naumu; Wallace A. Naumu; Hideo Nonaka; Hiromi
Nonaka; Kazuo Nonaka; Masatoshi Nonaka; Shigekichi
Nonaka; Takano Nonaka; and Tadao Nonaka,
Defendants-Appellees (Two Cases).
 No. 88-1543.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted April 4, 1989.
Decided Oct. 5, 1989.
Rehearing Denied Oct. 27, 1989 and Nov. 21, 1989.
 
 Steven S. Michaels and William M. Tam, Deputy Attys. Gen., Honolulu, Hawaii, for defendants-appellants.
 Alexander C. Marrack, Reinwald, O'Connor, Marrack & Hoskins, Honolulu, Hawaii, for plaintiffs-appellees.
 J. Russell Cases, Philip J. Leas, and Robert B. Bunn, Cades, Schutte, Fleming & Wright, and William Quinn, Goodsill, Anderson, Quinn & Stifel, Honolulu, Hawaii, for defendants-appellees.
 Dennis M. Eagan, Deputy Atty. Gen., John K. Van De Kamp, Atty. Gen. of the State of Cal., Grace Berg Schaible, Atty. Gen. of the State of Alaska, Robert K. Corbin, Atty. Gen. of the State of Ariz., Robert T. Stephan, Atty. Gen. of the State of Kan., Mike Greely, Atty. Gen. of the State of Mont., Robert M. Spire, Atty. Gen. of the State of Neb., Brian McKay, Atty. Gen. of the State of Nev., Hal Stratton, Atty. Gen. of the State of N.M., Nicholas Spaeth, Atty. Gen. of the State of N.D., Dave Frohnmayer, Atty. Gen. of the State of Or., LeRoy S. Zimmerman, Atty. Gen. of the Com. of Pa., James E. O'Neil, Atty. Gen. of the State of R.I. and Providence Plantations, Jim Mattox, Atty. Gen. of the State of Tex., David L. Wilkinson, Atty. Gen. of the State of Utah, Jeffrey L. Amestoy, Atty. Gen. of the State of Vt., Mary Sue Terry, Atty. Gen. of the Com. of Va., and Kenneth O. Eikenberry, Atty. Gen. of the State of Wash., for amici curiae in support of appellants.
 Edward J. Connor, Jr., Pacific Legal Foundation, Sacramento, Cal., for amicus curiae in support of appellees.
 Appeal from the United States District Court for the District of Hawaii.
 Before GOODWIN, Chief Judge, and TANG, Circuit Judge, and GRANT, District Judge.*
 GOODWIN, Chief Judge:
 
 
 1
 This is the third time this challenge by Hawaii private land owners to recent developments in state water law has been before us. In Robinson v. Ariyoshi, 753 F.2d 1468 (9th Cir.1985), we held that the decision of the Supreme Court of Hawaii in McBryde Sugar Co. v. Robinson, 54 Haw. 174, 504 P.2d 1330, aff'd on rehearing 55 Haw. 260, 517 P.2d 26 (1973), appeal dismissed and certs. denied, 417 U.S. 962, 94 S.Ct. 3164, 41 L.Ed.2d 1135 and 417 U.S. 976, 94 S.Ct. 3183, 41 L.Ed.2d 1146 (1974), deprived appellees of vested water rights that had been recognized by prior Hawaii law, and thus resulted in an unconstitutional taking of appellees' property without just compensation.
 
 
 2
 The Supreme Court vacated that judgment and remanded the case for reconsideration in light of Williamson County Regional Planning Comm'n v. Hamilton Bank, 473 U.S. 172, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985). 477 U.S. 902, 106 S.Ct. 3269, 91 L.Ed.2d 560 (1986). We remanded to the district court to reconsider its prior ruling, which it confirmed. On appeal by the State, we now conclude that this case does not pose a ripe controversy, and therefore vacate the district court's opinion, 676 F.Supp. 1002 (D.Haw.1987), and remand with instructions to dismiss the complaints.
 
 
 3
 The facts underlying this dispute have been well set out before. See Robinson v. Ariyoshi, 441 F.Supp. 559 (D.Haw.1977) (Robinson I ), and our opinion affirming, Robinson v. Ariyoshi, 753 F.2d 1468 (9th Cir.1985) (Robinson III ); see also McBryde Sugar Co. v. Robinson, 504 P.2d 1330, 1346-48 (1973) (Marumoto, J., dissenting); Robinson v. Ariyoshi, 65 Haw. 641, 658 P.2d 287, 292-94 (Haw.1982) (Robinson II ). We therefore only briefly review the course of prior proceedings.
 
 
 4
 In the late 1920s, a dispute arose between Gay & Robinson (G & R)[1] and the territory of Hawaii over the former's practice of diverting water from the valley of the Koula Stream. The Supreme Court of the Territory (now the Supreme Court of Hawaii) determined that G & R owned the land comprising the watershed of the Koula and the "normal daily surplus waters" of the Koula. G & R was therefore entitled to divert normal daily surplus waters to lands outside the watershed. See Territory v. Gay, 31 Haw. 376 (1930), aff'd, 52 F.2d 356 (9th Cir.), cert. denied, 284 U.S. 677, 52 S.Ct. 131, 76 L.Ed. 572 (1931). The decision thus approved the longstanding practice of various riparian owners of diverting waters to arid lands and exchanging the rights to make such diversions.
 
 
 5
 Two decades later, G & R improved its system for diversion, and thereby decreased the flow of water to downstream owners, namely McBryde Sugar Co., Olokele Sugar Co., the State of Hawaii and a number of owners of small tracts, such as taro patches. In response, McBryde commenced in the then new state court an action to obtain a declaration of the water rights of the various parties. Notably, the parties did not challenge the rights confirmed by Territory, namely ownership of normal daily surplus waters and the right to divert; nor did the trial court disturb these rights. Rather, McBryde had sued to secure its right to the water it had been using before G & R improved its diversion system. In its decision, the Hawaii trial court quantified the appurtenant and prescriptive water rights of each of the parties. McBryde Sugar Co. v. Robinson, S.P. No. 108 (5th Cir.Ct. of Hawaii, Dec. 10, 1968) (McBryde I ).
 
 
 6
 The Supreme Court of Hawaii affirmed the trial court's decision as to appurtenant rights, but declared that these rights applied only to appurtenant lands, and did not support the diversion of water to land outside the watershed. McBryde Sugar Co. v. Robinson, 504 P.2d 1330, 1339-41 (1973) (McBryde II ). In all other respects, it reversed. Sua sponte, the state supreme court overruled all territorial cases to the contrary and adopted the English common law doctrine of riparian rights. Id. at 1341-44. Also sua sponte, the court declared the State to be "the owner of the water in the Koula Stream and Hanapepe River." Id. at 1339. Recognizing the res judicata effect of Territory as between the State and G & R, the court noted that the State's ownership rights were superior only to those of any nonparties to Territory. Id. at 1339, 1345. However, it also observed that the holding in Territory assumed the existence of "normal surplus waters," and in light of the court's adoption of riparian rights, such an assumption was no longer well founded. Id. at 1345. The court thus called even G & R's adjudicated rights into question.
 
 
 7
 McBryde, G & R and the smaller owners petitioned for rehearing, alleging, inter alia, that the decision constituted an unconstitutional taking of their vested property rights. After limiting the issues on rehearing, and thereby excluding consideration of any constitutional issues, the court reaffirmed its holding, 55 Haw. 260, 517 P.2d 26 (1973), and the United States Supreme Court denied review, 417 U.S. 962, 94 S.Ct. 3164, 41 L.Ed.2d 1135 and 417 U.S. 976, 94 S.Ct. 3183, 41 L.Ed.2d 1146 (1974). The successors in title to G & R (collectively "Robinson") also commenced this action in the United States District Court for the District of Hawaii, alleging violations of the due process and just compensation clauses of the fifth and fourteenth amendments.[2] The district court ruled in favor of Robinson, and the State appealed.
 
 
 8
 In considering the appeal, we certified six questions to the Supreme Court of Hawaii. We specifically asked whether the State of Hawaii could claim collateral estoppel or bar and merger effect from its decision in McBryde II in a future action to quiet title. The court responded that "McBryde in its current posture has no bar and merger effect," because no final judgment had yet been entered in the case, and "issue preclusion would be confined to the quantification of appurtenant water rights," because it affirmed only that portion of the trial court's decision. Robinson II, 658 P.2d at 296. We held, nevertheless, that the decision in McBryde II constituted a sufficient cloud upon the title of the owners to give the district court subject matter jurisdiction to consider their claim. We therefore affirmed the decision of the district court.
 
 
 9
 The issue before us is whether the decision of the Supreme Court of Hawaii in McBryde II represents a "final, definitive position," Williamson County, 473 U.S. at 191, 105 S.Ct. at 3119, so as to render this dispute a ripe controversy. Particularly in light of that court's subsequent interpretation of McBryde II, we conclude that it does not.
 
 
 10
 In Williamson County, the Supreme Court affirmed the principle that the ripeness of a takings claim turns on whether the government entity charged with a taking has reached a final decision as to the property interest in question. Williamson County presented a "taking" dispute in the context of a zoning regulation. The court reasoned,
 
 
 11
 [A]mong the factors of particular significance in [a taking] inquiry are the economic impact of the challenged action and the extent to which it interferes with reasonable investment-backed expectations. Those factors simply cannot be evaluated until the administrative agency has arrived at a final, definitive position regarding how it will apply the regulations at issue to the particular land in question.
 
 
 12
 473 U.S. at 191, 105 S.Ct. at 3119 (citations omitted). Only at that point can a court "tell whether the land retain[s] any reasonable beneficial use or whether [existing] expectation interests ha[ve] been destroyed." Id. at 190 n. 11, 105 S.Ct. at 1138 n. 11.
 
 
 13
 We must therefore examine whether the decision in McBryde II constituted a final decision so as to render this controversy ripe for federal constitutional challenge as a taking.
 
 
 14
 As noted, we previously certified six questions to the Supreme Court of Hawaii.[3] In response, the Hawaii court stated that the decision in McBryde II did not constitute the final disposition of the case. See Robinson II, 658 P.2d at 295-97. The court explained that the McBryde litigation began and was treated throughout by the trial court as an action to determine the rights of the parties to the waters of the Hanapepe. The trial court had attempted to identify the exact quantity of water to which each party was entitled. On appeal, the Supreme Court of Hawaii affirmed the award of appurtenant rights and reversed the award of prescriptive and surplus rights. No specific instruction was imparted to the trial court, and the Supreme Court did not utilize its power to render a final judgment. Further, no further proceedings are of record in the trial court. The court explained that the partial reversal without instruction merely rendered that portion of the judgment void. Id. at 296-97. Thus the only portion of the judgment which could be considered final after appeal was the partial quantification of the parties' water rights, namely the award of appurtenant rights.
 
 
 15
 The Supreme Court of Hawaii acknowledged that its opinion in McBryde II addressed other issues, namely the existence of riparian rights, the limit on the right to divert water originating in appurtenant rights and the State's ownership of the waters. But because the court had not given the trial court specific instructions, these determinations had the effect only of "law of the case"; though they would serve as a foundation for any further action, they "would not necessarily be completely dispositive of such an action." Id.
 
 
 16
 The aspects of McBryde II to which the appellees most object, namely that water cannot be collected and transported out of the watershed and that there is no "normal surplus water," were never placed directly in issue by the case before the Hawaii trial court. McBryde had sued only to protect those waters it had been using before G & R improved its diversion system. It would appear, therefore, that final judgment as to these issues would not have been possible.
 
 
 17
 Even though the supreme court's ruling lacked the effect of res judicata or collateral estoppel, it seems clear that the issues commented upon by the Hawaii Supreme Court substantially clouded the title of the appellees and could affect financing and transfers of property interests. The court itself acknowledged that McBryde II would be subject to the doctrine of stare decisis, and, indeed, that that doctrine could bind lower state courts even as to those portions of the decision not necessary to the actual adjudication of the controversy, if such portions had been deliberated with care and were likely to call for decision before the termination of the litigation. The court thus implied that its statements concerning the issues of diversion and ownership would bind lower courts in future litigation.
 
 
 18
 However, we cannot say at this point that appellees "retained [no] reasonable beneficial use" or that their "expectation interests had been [completely] destroyed." Williamson County, 473 U.S. at 190 n. 11, 105 S.Ct. at 3118 n. 11. To date, the State has not interfered in any way with the parties' use or diversions of the waters of the Hanapepe and its tributaries. We therefore now conclude that even if the State of Hawaii has placed a cloud on the title of the various private owners, this inchoate and speculative cloud is insufficient to make this controversy ripe for review.
 
 
 19
 Further, we reject appellees' argument that their claim is analogous to a physical takings claim. In the case of a physical invasion, the extent of the injury is known at the moment of the invasion. Further, the property owner incurs actual injury even if the government subsequently rescinds its action. By contrast, without a final judgment, and therefore the certainty of res judicata or the effect of collateral estoppel, we cannot know the extent of the injury suffered by the private owners.
 
 
 20
 We also note that the district court relied to some extent upon former statements by the State in previous filings as to the finality of the decision in McBryde II. A federal court is not bound, however, by the State's previous understanding of the finality of McBryde, but rather must determine for itself whether this case presents a controversy ripe for federal determination.
 
 
 21
 The decision of the district court is therefore REVERSED, and this action is REMANDED with instructions to dismiss the complaints.
 
 
 
 *
 Honorable Robert A. Grant, United States District Judge for the Seventh Circuit, sitting by designation
 
 
 [1]
 The actual parties to the dispute were the partners doing business as Gay & Robinson. Appellees in this action are their successors in title
 
 
 [2]
 Robinson initially designated the State and the private owners as defendants. The private parties, however, all concurred with Robinson, as so have been treated throughout as plaintiffs
 
 
 [3]
 We note that we regard as an authoritative reading of Hawaii law the opinion by the supreme court in which it responded to our questions