**V. Roy LEFCOURT, Plaintiff,**

**v.**

**SUPERIOR COURT FOR THE COUNTY OF SAN FRANCISCO, et al., Defendants.**

**No. C–99–2385 WHO.**

United States District Court, N.D. California.

Aug. 9, 1999.

---

Dennis P. Riordan, Dylan L. Schaffer, Donald M. Horgan, San Francisco, CA, for plaintiff.

Daniel T. Bernhard, City Attorney's Office, San Francisco, CA, for defendants.

## OPINION AND ORDER

ORRICK, District Judge.

In this action, plaintiff V. Roy Lefcourt ("Lefcourt") challenges the constitutionality of a contempt citation issued against him by the Honorable Richard Kramer ("Judge Kramer") of the Superior Court for the City and County of San Francisco ("Superior Court"). For the reasons set forth hereinafter, the Court dismisses this action with prejudice for lack of subject matter jurisdiction.

I.

The following statement of facts is summarized from the allegations of the complaint, and the court documents attached to the parties' responses to the Order to Show Cause, of which the Court takes judicial notice.

On January 12, 1998, Karen Woempner ("Woempner") hired Lefcourt to represent her boyfriend, Eric Borst ("Borst"), in probation revocation proceedings before Judge Kramer in the Superior Court. Woempner told Lefcourt that it was urgent that Borst be released from custody so that he could make necessary burial and funeral arrangements for his mother, who had recently died. Two days later, on January 14, Lefcourt filed a motion seeking Borst's release, supported by his own declaration.

The matter was heard on January 16. Lefcourt sent a colleague to attend the hearing because he had left town for a previously scheduled vacation on January 15. When the colleague could not answer Judge Kramer's questions, the matter was continued to January 20.

On January 20, Judge Kramer asked Lefcourt about the factual allegations in the declaration concerning the date of death of Borst's mother, and the location of her body. Lefcourt agreed to investigate those issues and the matter was continued until January 27.

On January 27, shortly before the hearing, Borst told Lefcourt that his mother had died on November 22, that her body was in a mortuary, and that his release was necessary to make arrangements for cremation and burial of the ashes. Borst also told Lefcourt that since Lefcourt first spoke with Woempner, a sheriff's deputy had taken Borst out of the holding cell and he had been able to sign the documents necessary for cremation. The funeral ceremony and burial had not taken place.

On January 27, Lefcourt told Judge Kramer these facts and stated that he intended to withdraw the bail motion be-

cause Borst's release was no longer necessary in order to have his mother's body cremated.

On January 28, Lefcourt withdrew the motion, and Judge Kramer cited him for contempt for making false statements in his declaration in support of the motion.

On March 16, 1998, Lefcourt asked Judge Kramer to recuse himself. At that time, Lefcourt was a candidate for the San Francisco Municipal Court bench in the June 1998 election. Judge Kramer had publicly endorsed Lefcourt's opponent, Wallace Douglass. Judge Kramer declined to recuse himself.

A hearing was held on the contempt citation on May 19. On May 21, two and a half weeks before the election, Judge Kramer issued his ruling finding Lefcourt in contempt, and fining him $700.

On May 26, 1998, Lefcourt challenged the contempt order in a petition for *certiorari* to the California Court of Appeal. The following day, the Court of Appeal summarily denied, without prejudice, Lefcourt's request for an order staying the contempt order, due to Lefcourt's failure to comply with Rule 56(c)(4) of the California Rules of Court.[1] The Court of Appeal also summarily denied, on the merits, Lefcourt's contention that Judge Kramer was disqualified from participation in the matter, citing section 170.3(d) of the California Code of Civil Procedure.[2] On October 7, 1998, the Court of Appeal issued another order, which states in its entirety:

"The petition for writ of certiorari is denied."

On December 8, 1998, Lefcourt filed a petition for a writ of *certiorari* in the California Supreme Court. On December 11, 1998, the Supreme Court issued an order transferring the matter to the Court of Appeal "for consideration in light of *Hagan v. Superior Court*, (1962) 57 Cal.2d 767, 22 Cal.Rptr. 206, 371 P.2d 982. In the event the Court of Appeal determines that this petition is substantially identical to a prior petition, the repetitious petition shall be denied." On January 7, 1999, the Court of Appeal issued an order providing, in its entirety: "The petition for writ of *certiorari* is denied. (Hagan v. Superior Court (1962) 57 Cal.2d 767, 22 Cal.Rptr. 206, 371 P.2d 982.)"[3]

On January 19, 1999, Lefcourt filed a petition in the California Supreme Court for review of that Court of Appeal order. On March 17, 1999, the California Supreme Court issued an order providing, in its entirety: "Petition for review DENIED."

## II.

### A.

Controlling authority in this case are the two Supreme Court cases, *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206

---

1. Rule 56(c)(4) requires that a petition for a writ be accompanied by a transcript of the proceedings leading to the order that is challenged, or a declaration (1) explaining why a transcript is unavailable and fairly summarizing the proceedings or (2) stating that a transcript has been ordered and the date that it is expected to be filed.

2. Section 170.3(d) provides: "The determination of the question of the disqualification of a judge is not an appealable order and may be reviewed only by a writ of mandate from the appropriate court of appeal sought within 10 days of notice to the parties of the decision and only by the parties to the proceeding."

3. In *Hagan*, the California Supreme Court held that it was well settled

> "that after the intermediate court has denied an application for an original writ, proper procedure prohibits the filing of an original application in this court, even though this court, in the constitutional sense, has jurisdiction to entertain such an application. The losing party is required to petition this court for a hearing after the original denial. If he does not, this court will not, normally, consider the original application filed with it."

57 Cal.2d at 769–70, 22 Cal.Rptr. 206, 371 P.2d 982 (citations omitted).

(1983). In *Rooker,* the Supreme Court held that a federal district court does not have jurisdiction over a suit alleging that a state court judgment violated the federal constitution. 263 U.S. at 415–16, 44 S.Ct. 149.

> If the constitutional questions stated in the bill actually arose in the cause, it was the province and duty of the state courts to decide them; and their decision, whether right or wrong, was an exercise of jurisdiction. If the decision was wrong, that did not make the judgment void, but merely left it open to reversal or modification in an appropriate and timely appellate proceeding.... Under the legislation of Congress, no court of the United States other than this court could entertain a proceeding to reverse or modify the judgment for errors of that character.... To do so would be an exercise of appellate jurisdiction. The jurisdiction possessed by the District Court is strictly original.

*Id.* (citation omitted).

Sixty years after *Rooker,* the Supreme Court revisited the issue in *Feldman.* The Court again held that district courts do not have jurisdiction "over challenges to state court decisions in particular cases arising out of judicial proceedings even if those challenges allege that the state court's action was unconstitutional." 460 U.S. at 486, 103 S.Ct. 1303. Such review may be had only in the United States Supreme Court. *Id.* (citing 28 U.S.C. § 1257).

The Court also clarified that even issues that were not raised in the state court may be barred.

> [T]he fact that we may not have jurisdiction to review a final state court judgment because of a petitioner's failure to raise his constitutional claims in state court does not mean that a United States District Court should have jurisdiction over the claims. By failing to raise his claims in state court a plaintiff may forfeit his right to obtain review of the state court decision in any federal court.

*Id.* at 483 n. 16, 103 S.Ct. 1303.

The rationale for this rule is that state courts are as competent as federal courts to decide federal constitutional issues, and that any other rule would result in a waste of judicial resources and unnecessary friction between state and federal courts. *Worldwide Church of God v. McNair,* 805 F.2d 888, 890 (9th Cir.1986).

■ One exception to the *Rooker–Feldman* doctrine exists where the federal suit is a general challenge to the constitutionality of a state rule or law, which does not require review of a final state court judgment in a particular case. *Feldman,* 460 U.S. at 486, 103 S.Ct. 1303. The district court does not have jurisdiction, however, if it cannot evaluate the constitutional claims without conducting a review of the state court's legal determinations in a particular case. *Worldwide Church of God,* 805 F.2d at 892–93. Thus, where the constitutional claims are "inextricably intertwined" with the state court's application of the law in a particular case, "the District Court is in essence being called upon to review the state court decision." *Feldman,* 460 U.S. at 483 n. 16, 103 S.Ct. 1303. "This the District Court may not do." *Id.*

Justice Marshall later opined, in a concurring opinion, that "the federal claim is inextricably intertwined with the state-court judgment if the federal claim succeeds only to the extent that the state court wrongly decided the issues before it." *Pennzoil Co. v. Texaco, Inc.,* 481 U.S. 1, 25, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987) (Marshall, J., concurring in the judgment). "Where federal relief can only be predicated upon a conviction that the state court was wrong, it is difficult to conceive the federal proceeding as, in substance, anything other than a prohibited appeal of the state-court judgment." *Id.; see also Dubinka v. Judges of Superior Court of State of California for County of Los Angeles,* 23 F.3d 218, 222 (9th Cir.1994) (citations omitted) ("Courts have generally conclud-

ed that claims are inextricably intertwined when the district court must challenge both the challenged rule and the state court's application of that rule.").

■ Lefcourt does not assert a general challenge to the constitutionality of California's contempt of court law. Rather, he challenges the constitutionality of Judge Kramer's application of that law to Lefcourt's conduct. He can succeed in this suit only if this Court determines that Judge Kramer's application of California's contempt law violates the federal constitution. This places Lefcourt's claim squarely within the *Rooker–Feldman* doctrine, unless an exception to the doctrine applies.

### B.

Lefcourt argues that this case falls within an exception to the *Rooker–Feldman* doctrine set forth in *Robinson v. Ariyoshi*, 753 F.2d 1468 (9th Cir.1985), *judgment vacated and remanded on other grounds*, 477 U.S. 902, 106 S.Ct. 3269, 91 L.Ed.2d 560 (1986). In *Robinson*, the Ninth Circuit held that the *Rooker–Feldman* doctrine does not bar a subsequent federal suit if the state court expressly refused to consider the plaintiff's federal constitutional claims. *Id.* at 1472–73. Lefcourt contends that because the California Court of Appeal and the California Supreme Court summarily denied his petitions for a writ of *certiorari*, the state courts refused to hear his constitutional claims. Thus, Lefcourt argues, *Robinson* controls, and the *Rooker–Feldman* doctrine does not bar this Court from hearing his federal constitutional claims against Judge Kramer and the Superior Court. Because there are surface similarities between *Robinson* and the instant case, the Court will discuss the *Robinson* case in some depth.

*Robinson* involved Hawaiian water rights. When the case was appealed to the Hawaii Supreme Court, all parties relied upon existing Hawaiian water law. *Id.* at 1470. The Hawaii Supreme Court *sua sponte* overruled the prior law, and adopted the English common law doctrine

of riparian rights. *Id.* The adversely affected parties petitioned for rehearing, which was granted, but only on two limited issues. *Id.* The Court did not permit the parties to brief state and federal constitutional issues that were raised in the petitions for rehearing. *Id.* at 1470–71 (citing *Robinson v. Ariyoshi*, 441 F.Supp. 559, 564 (D.Hawai'i 1977)); *see also Robinson*, 441 F.Supp. at 570. Upon rehearing, the Hawaii Supreme Court, in a two paragraph *per curiam* opinion, adhered to its original decision. *McBryde Sugar Co. v. Robinson*, 55 Haw. 260, 517 P.2d 26 (1973). The United States Supreme Court denied three separate petitions for *certiorari*. *McBryde Sugar Co. v. Hawaii*, 417 U.S. 962, 94 S.Ct. 3164, 41 L.Ed.2d 1135 (1974); *Robinson v. Hawaii*, 417 U.S. 976, 94 S.Ct. 3183, 41 L.Ed.2d 1146 (1974); *Albarado v. Hawaii*, 417 U.S. 976, 94 S.Ct. 3183, 41 L.Ed.2d 1146 (1974).

A suit was then filed in federal court, pursuant to 42 U.S.C. § 1983, to enjoin enforcement of the Hawaii Supreme Court's decision, and to declare it void, on the ground that it amounted to deprivation of property rights in violation of procedural and substantive due process. *Robinson*, 441 F.Supp. at 561–62, 580. The district court opinion, which was issued several years prior to the Supreme Court's decision in *Feldman*, did not discuss the *Rooker–Feldman* doctrine.

On appeal, the Ninth Circuit held that the *Rooker–Feldman* doctrine did not preclude the district court from assuming jurisdiction over the constitutional claims.

> Turning to application of the *Feldman* doctrine, we cannot see how federal constitutional issues which the state court refused to consider on a petition for rehearing are at all, let alone inextricably, intertwined with a previously reached state court judgment on riparian rights....

> Thus we are in no danger of serving impermissibly in an appellate role vis-a-vis the Hawaii state court, or of reopen-

ing matters which have been litigated and decided in state court. Where a state court has refused to entertain federal constitutional claims, a federal court violates the precepts of neither subject matter jurisdiction nor res judicata by hearing those claims.

*Robinson,* 753 F.2d at 1472–73.

Lefcourt contends that *Robinson* controls here, because neither the California Court of Appeal nor the California Supreme Court granted *certiorari* on his challenges to Judge Kramer's contempt citation. Following *Robinson,* Lefcourt thus contends that the *Rooker–Feldman* doctrine does not require dismissal of his constitutional claims against Judge Kramer and the Superior Court.

Lefcourt is wrong, however, for two reasons. First, the continued vitality of *Robinson* is doubtful. Second, even if *Robinson* remains good law, the facts of Lefcourt's case are distinguishable from those of *Robinson* on at least two grounds.

1.

*Robinson* is of questionable validity in light of its subsequent history. The United States Supreme Court granted *certiorari* in *Robinson,* summarily vacated the judgment, and remanded the case to the Ninth Circuit for further consideration in light of *Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City,* 473 U.S. 172, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985). *Ariyoshi v. Robinson,* 477 U.S. 902, 106 S.Ct. 3269, 91 L.Ed.2d 560 (1986). In *Williamson County,* the Supreme Court held that a constitutional claim for deprivation of property is not ripe until the plaintiff obtains a final decision on the application of the law to its property and utilizes the appropriate procedures for obtaining just compensation. 473 U.S. at 186, 105 S.Ct. 3108. On re-

mand, the Ninth Circuit found that the case did not present a ripe controversy, and remanded the case to the district court with instructions to dismiss it. *Robinson v. Ariyoshi,* 887 F.2d 215, 216 (9th Cir. 1989).

The Supreme Court has held that ripeness is a jurisdictional issue relating to the "case or controversy" requirement of Article III of the United States Constitution. *See, e.g., Reno v. Catholic Soc. Servs., Inc.,* 509 U.S. 43, 57 n. 18, 113 S.Ct. 2485, 125 L.Ed.2d 38 (1993); *Metropolitan Wash. Airports Auth. v. Citizens for the Abatement of Aircraft Noise, Inc.,* 501 U.S. 252, 265 n. 13, 111 S.Ct. 2298, 115 L.Ed.2d 236 (1991). The Ninth Circuit has similarly held that "If a claim is unripe, federal courts lack subject matter jurisdiction and the complaint must be dismissed." *Southern Pacific Transp. Co. v. City of Los Angeles,* 922 F.2d 498, 502 (9th Cir.1990).

Because the claims at issue in *Robinson* were not ripe, the Ninth Circuit lacked subject matter jurisdiction to opine on the application of the *Rooker–Feldman* doctrine to the facts of that case. Thus, even though *Robinson* has never been overruled, it is of questionable validity as precedent. *See, e.g., Elks Nat'l Found. v. Weber,* 942 F.2d 1480, 1484 (9th Cir.1991) (questioning, without deciding, whether *Robinson* remains good law).[4] Even assuming that *Robinson* remains good law, however, the case is distinguishable on several grounds, as explained below.

■ Lefcourt relies heavily upon the Ninth Circuit's holding in *Robinson* that the *Rooker–Feldman* doctrine bars federal litigation of an issue only where the issue was actually considered and decided by a state court. The Ninth Circuit held:

[W]e view the res judicata requirement of full and fair opportunity to litigate,

4. The Court also notes that, although *Robinson* has been cited in subsequent Ninth Circuit cases, its holding has never been applied. Indeed, the Ninth Circuit has gone to great lengths to distinguish *Robinson* in the only

cases to date with similar fact patterns. *See Elks Nat'l Found.,* 942 F.2d at 1485; *Partington v. Gedan,* 961 F.2d 852, 864–65 (9th Cir. 1992).

and the *Feldman* "inextricably intertwined" barrier to federal jurisdiction as two sides of the same coin. Under the rubric of either "jurisdiction" or "res judicata," the crux of the question is whether there has already been actual consideration of and a decision on the issue presented. If consideration and decision have been accomplished, action in federal court is an impermissible "appeal" from the state court decision. If no consideration has been given, or any decision on the matter is ambiguous, it is unlikely that the issues presented to the state high court are so "inextricably intertwined" that the federal court cannot take jurisdiction. Nor is it likely that there will have been a full enough and fair enough opportunity for litigation to warrant the claim preclusive effect of res judicata.

*Robinson,* 753 F.2d at 1472 (citation omitted). Lefcourt's reliance on this statement of the law is unavailing for two reasons. First, it is flatly at odds with *Feldman* itself, and inaccurately describes California law on *res judicata.* Second, even if *Robinson* is correct that *Rooker–Feldman* bars only claims that would be barred by *res judicata,*[5] the summary denials of Lefcourt's petitions for *certiorari* are *res judicata* on this Court.

■ The Supreme Court, in *Feldman,* held that a party may be barred from raising constitutional claims in federal court by failing to raise them in state court. 460 U.S. at 482 n. 16, 103 S.Ct. 1303.

> [T]he fact that we may not have jurisdiction to review a final state court judgment because of a petitioner's failure to raise his constitutional claims in state court does not mean that a United States District Court should have jurisdiction over the claims. By failing to raise his claims in state court a plaintiff may forfeit his right to obtain review of the state court decision in any federal court.

*Id.* at 483, 103 S.Ct. 1303. Thus, pursuant to *Feldman* itself, there need not be a state court decision on the federal constitutional issue for the *Rooker–Feldman* jurisdictional bar to apply.

■ *Robinson'*s statement that the crux of the *res judicata* inquiry is whether the issue was heard and decided by the state court also misstates California law of *res judicata.*[6] Under California law, a prior judgment is *res judicata* as to all matters that were actually litigated, or *which could have been litigated* in the prior proceeding. *Busick v. Workmen's Compensation Appeals Bd.,* 7 Cal.3d 967, 975, 104 Cal.Rptr. 42, 48, 500 P.2d 1386 (1972); *General Dynamics Corp. v. Workers' Compensation Appeals Bd.,* 71 Cal.App.4th 624, 629, 83

---

**5.** Courts, including the Ninth Circuit, have recognized that there are differences between the doctrine of *res judicata* and the *Rooker–Feldman* doctrine. *See, e.g., Olson Farms, Inc. v. Barbosa,* 134 F.3d 933, 937 (9th Cir. 1998) ("*Rooker–Feldman* is a jurisdictional doctrine, rather than a res judicata doctrine."); *Centres, Inc. v. Town of Brookfield, Wisc.,* 148 F.3d 699, 702 (7th Cir.1998) ("[I]f the alleged injury is distinct from the state court judgment and not inextricably intertwined with it, the *Rooker–Feldman* doctrine does not apply, although the doctrines of claim and issue preclusion may be applicable."); *Doctor's Assocs., Inc. v. Distajo,* 107 F.3d 126, 138 (2d Cir.1997) ("[A] district court may lack subject matter jurisdiction under the *Rooker–Feldman* doctrine even when that court would not be precluded, under res judicata or collateral estoppel principles, by a prior state judgment."). This Court need not attempt to define the differences between the two doctrines, however, because Lefcourt's federal claims are barred by *res judicata* as well as by *Rooker–Feldman,* as explained below.

**6.** *Robinson* had no reason to address California law of res judicata, of course, because in that case the Ninth Circuit was reviewing a decision of the Hawaii Supreme Court. Here, this Court must look to California law of *res judicata* because a federal court must give to a state court judgment the same preclusive effect as would be given that judgment under the law of the state in which the judgment was rendered. *Migra v. Warren City Sch. Dist. Bd. of Educ.,* 465 U.S. 75, 81, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984).

Cal.Rptr.2d 907 (1999); *Weikel v. TCW Realty Fund II Holding Co.,.* 55 Cal. App.4th 1234, 1245 n. 13, 65 Cal.Rptr.2d 25, 31 n. 13 (1997).

The Ninth Circuit has held that "the contention that federal claimants must have access to a federal forum because they have no practical opportunity to present their claims in state court will prevail only when procedural laws bar presentation of the claims." *Dubinka,* 23 F.3d at 224 (citing *Moore v. Sims,* 442 U.S. 415, 430 n. 12, 99 S.Ct. 2371, 60 L.Ed.2d 994 (1979) and *Pennzoil,* 481 U.S. at 14–16, 107 S.Ct. 1519) (discussing *Younger* abstention). Lefcourt does not contend that California procedural law barred him from presenting his constitutional claims in his petitions for a writ of *certiorari.*

In *Partington,* the Ninth Circuit noted that an opportunity to be heard "does not necessarily include an opportunity to present one's arguments orally." 961 F.2d at 865. In that case, an attorney challenged the Hawaii Supreme Court's imposition of a $50 fine against him. *Id.* at 864. The attorney relied on *Robinson* and argued that the federal court had jurisdiction to hear his constitutional claims because the Hawaii Supreme Court refused to hear them. *Id.* The Ninth Circuit distinguished *Robinson* on the ground that Partington had presented his arguments to the California Supreme Court in a written objection to the sanction, and the Supreme Court, in its order upholding the sanctions, stated that it had given plenary consideration to Partington's claims. *Id.* at 865. The Court affirmed dismissal of the federal claims, pursuant to the *Rooker–Feldman* doctrine. *Id.*

Although in *Partington,* the Hawaii Supreme Court expressly stated that it had considered his claims, and here the court of appeal and Supreme Court merely denied Lefcourt's applications for a writ of *certiorari,* there is no evidence before the Court that Lefcourt was prevented from asserting his constitutional claims in his

state court petitions for a writ of *certiorari.*

 Moreover, under California law, the summary denial of Lefcourt's petition for a writ of *certiorari* is a decision on the merits that is *res judicata.* Under California law, the only avenue for appeal of contempt orders is through a petition for writ of *certiorari* or *habeas corpus. Powers v. City of Richmond,* 10 Cal.4th 85, 107, 40 Cal.Rptr.2d 839, 851, 893 P.2d 1160 (1995); *id.* at 122, 40 Cal.Rptr.2d 839, 893 P.2d 1160, (George, J., concurring) (citing *Gale v. Tuolumne County Water Co.,* 169 Cal. 46, 145 P. 532 (1914) and *Tyler v. Connolly,* 65 Cal. 28, 32–33, 2 P. 414 (1884)); *see also* Cal.Code.Civ.Proc. §§ 128(b) and 1222. The California Supreme Court has held that "when writ review is the exclusive means of appellate review of a final order or judgment, an appellate court may not deny an apparently meritorious writ petition...." *Powers,* 10 Cal.4th at 113–14, 40 Cal.Rptr.2d at 856, 893 P.2d 1160. Although generally a summary denial of a writ has no *res judicata* effect, *res judicata* does attach to a summary denial of a writ where the writ is the only avenue for appeal. *See Consumers Lobby Against Monopolies v. Public Util. Comm'n,* 25 Cal.3d 891, 901, 160 Cal.Rptr. 124, 129, 603 P.2d 41 (1979) (holding that summary denial of a petition for review is *res judicata* where such a petition is the only means for appeal); *see also Kowis v. Howard,* 3 Cal.4th 888, 897 n. 2, 12 Cal. Rptr.2d 728, 732 n. 2, 838 P.2d 250 (1992) (acknowledging that *Consumers Lobby* is an exception to the general rule). Accordingly, this Court must assume that the state court considered Lefcourt's arguments and found them meritless when it denied his petitions for *certiorari.* Those conclusions are *res judicata* on this court.

For all of these reasons, *Robinson* is distinguishable, even if it remains good law. The Court finds that Lefcourt had the opportunity to raise his constitutional claims in state court and those arguments were considered and rejected when the

state courts summarily denied his petitions for writs of *certiorari.* Accordingly, the *Rooker–Feldman* doctrine applies, even under *Robinson*'s interpretation of the doctrine, and this Court lacks subject matter jurisdiction over Lefcourt's case.

3.

In addition, a later Ninth Circuit panel has essentially limited *Robinson* to its unusual facts. In *Elks National Foundation,* as in *Robinson,* the state Supreme Court declined to hear constitutional arguments that were first raised in a petition for rehearing after a ruling by the state Supreme Court. *Elks Nat'l Found.,* 942 F.2d at 1482–83. The adversely affected parties refiled their constitutional claims in federal court. They relied entirely on *Robinson* in arguing that the district court had jurisdiction over their constitutional claims because those claims were never heard and decided by the state court. *Id.* at 1483.

After questioning the continued validity of *Robinson* in light of its subsequent history, the Ninth Circuit distinguished *Robinson* on its facts. *Id.* at 1484–85. The court noted that in *Robinson,* the state Supreme Court created entirely new law of general application, whereas in *Elks National Foundation,* the state courts simply applied well-established law to the facts of the case before it. Because the plaintiffs in federal court were challenging only the application of well-established law to the facts of their particular case, the Ninth Circuit found that *Robinson* did not apply. *Id.* at 1485. The Ninth Circuit found that the claims at issue were inextricably intertwined with the state court judgment, and affirmed the district court's dismissal of the action for lack of subject matter jurisdiction, pursuant to the *Rooker–Feldman* doctrine. *Id.* at 1483, 1486.

Here, as in *Elks National Foundation,* plaintiff is challenging nothing more than the application of well-established law to the particular facts of his case. Unlike *Robinson,* the state Supreme Court did not unexpectedly establish a new law of general application. Thus, even assuming that *Robinson* remains good law, the Court follows *Elks National Foundation* instead of *Robinson,* and dismisses the action for lack of subject matter jurisdiction, pursuant to the *Rooker–Feldman* doctrine.

III.

Accordingly,

IT IS HEREBY ORDERED that this action is dismissed with prejudice for lack of subject matter jurisdiction.