# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT
_____

No. 02-3694/02-3695
_____

Earnest Simes, Individually and in his    *
official capacity as Justice of the Peace   *
of Phillips County, Arkansas,    *
   *
   *
       Plaintiff-Appellant,    *
   *
   *   Appeal from the United States
Geraldine Davis, Individually and in    *   District Court for the
her official capacity as Justice of the    *   Eastern District of Arkansas.
Peace of Phillips County, Arkansas;    *
Joseph Dean, Individually and in his    *
official capacity as Justice of the Peace   *
of Phillips County, Arkansas; Clausey    *
Myton, Individually and in his official    *
capacity as Justice of the Peace of    *
Phillips County, Arkansas; Arlanda    *
Jacobs, Individually and in her official   *
capacity as Justice of the Peace of    *
Phillips County, Arkansas,    *
   *
       Appellants,    *
   *
      v.    *
   *
Mike Huckabee, Governor of the State   *
of Arkansas; Phillips County, Arkansas; *
Don Gentry, County Judge of Phillips   *
County and Representative of all    *
Arkansas County Judges as a class of    *
defendants; Randall Williams,    *
Honorable, Special Appointed Judge    *
for the First Judicial District in the State *

of Arkansas; Helena-West Helena-
Phillips County Port Authority; Dick
Barclay, Director of Finance &
Administration; Jimmie Lou Fisher,
State Treasurer; Rebecca Gattas,
Treasurer of Phillips County, Arkansas
and Representative of all Arkansas
County Treasurers as a class of
defendants,

     Appellees.

     \*
     \*
     \*
     \*
     \*
     \*
     \*
     \*
     \*
     \*
     \*

_____

Submitted: September 11, 2003
Filed:

_____

Before BYE, HANSEN, and RILEY, Circuit Judges.

_____

BYE, Circuit Judge.

Appellants, five members of the Phillips County, Arkansas, Quorum Court ("QC") appeal the district court's grant of summary judgment for defendants, various Arkansas state and county officials. Appellants' federal civil rights and constitutional claims arose from their four-day incarceration for refusing to vote in favor of an ordinance that would have referred a tax initiative to Phillips County voters. The district court held it lacked jurisdiction, basing its decision on the <u>Rooker-Feldman</u> doctrine. We reverse.

I

As the Arkansas Supreme Court stated in a related proceeding involving the same QC members, "[t]his case arises out of community and political discord

attributed to the operation of the Helena-West Helena-Phillips County Port Authority and a project known as Slack Water Harbor." Dean v. Williams, 6 S.W.3d 89, 91 (Ark. 1999). Phillips County voters had previously passed a one percent sales tax to aid the industrial development of the harbor. This tax expired around January 2000. Before its expiration, the Arkansas legislature passed Act 1357 of 1999, codified at ARK. CODE ANN. § 26-74-207, mandating when a county QC is presented with a petition from voters seeking a sales tax that fulfills certain requirements, the QC "*shall* submit the question of the levying of the tax to the electors." ARK. CODE. ANN. § 26-74-207(b) (emphasis added).

On August 23, 1999, two members of the Port Authority filed initiative petitions with the Phillips county clerk as required by Act 1357. According to the Act, the QC should have then submitted the question of a sales tax to the electors of the county, setting an election date within 120 days of the filing of the petitions. Id.

On September 14, 1999, the QC was presented with an ordinance which would have referred the sales tax initiative to the voters. However, despite the mandatory language of the Act, six members of the eleven-member QC voted against the ordinance. Five of those six are now the appellants in this case and were defendants in the earlier state contempt proceedings. As appellant QC members emphasize repeatedly in their briefs, the QC split along racial lines, with the African-American members constituting the majority and voting against the initiative. On October 14, 1999, two Port Authority members and a Phillips County taxpayer/elector filed suit in the Phillips County Circuit Court against the eleven members of the QC in their official capacity, seeking a writ of mandamus forcing the majority to vote to call an election. The circuit court held a hearing on November 12, 1999, at which it granted the requested relief and ordered the county legislators to hold a hearing by November 15, 1999, in which they were to enact the proposed ordinance.

-3-

Appellant QC members abruptly left at the beginning of the November 12 hearing after the circuit court disqualified their lawyer. The court held the hearing in spite of their protest. The QC members appealed the November 12 order to the Arkansas Supreme Court, and the appeal was eventually consolidated with a later petition for stay and writ of certiorari.

When November 15 passed with no vote on the ordinance, the circuit court set a hearing for November 18, 1999, in which appellant members of the QC were to show cause why they should not be held in contempt for failing to comply with the November 12 order. All five recalcitrant members appeared, but to the consternation of the circuit court judge, there were again issues of representation. QC members were initially accompanied by Alvin Simes, who had a contract to represent the QC as an entity, and John Walker, a lawyer from Little Rock who was contacted the morning of the hearing to represent the members individually. Simes refused to represent them individually, citing a conflict of interest. Walker asked for a continuance in order to confer with his clients, and when the judge refused to grant it, Walker likewise refused to represent the QC members. Appellants, without counsel at that juncture, each took the stand, invoking the Fifth Amendment. As a result of this hearing, the circuit court gave the five legislators a final chance to enact the ordinance, setting a deadline of 1:00 P.M., November 19, 1999, and also ordering if they did not do so they would be incarcerated until they complied. The appellants again refused to vote for the ordinance and were jailed. They remained in jail for four days and three nights. During this time, they filed a petition for writ of prohibition and a motion for a stay with the Arkansas Supreme Court, and also filed a notice of appeal from the November 18 contempt order.

Importantly, in their petition and appeal appellant QC members claimed numerous federal statutory and constitutional violations, including violations of the Thirteenth, Fourteenth, and Fifteenth Amendments to the U.S. Constitution, and the 1964 Civil Rights Act.

On November 22, 1999, the Arkansas Supreme Court granted a writ of certiorari and stayed the contempt order. Dean v. Williams, 5 S.W.3d 37 (Ark. 1999) (per curiam) ("Dean I"). The court directed counsel for all parties to brief the following three issues: 1) whether appellants had a duty to call an election under the Act; 2) whether they could be held in contempt for not doing so; and 3) whether the circuit court had jurisdiction to enter the contempt order. After hearing oral argument, the Arkansas Supreme Court issued a ruling on December 10, 1999, in which it addressed both the petition for writ of prohibition as well as the appeals from the contempt hearings. However, the court ruled on only state law issues, ignoring the federal claims. Dean v. Williams, 6 S.W.3d 89 (1999) ("Dean II").

In its opinion, the court noted the issue of lack of counsel and remanded the case for another contempt hearing at which the circuit court was to address the following state law issues: 1) whether QC attorney Simes violated Arkansas Rule of Civil Procedure 64(b) prohibiting a lawyer from withdrawing from a proceeding without permission of the court; and 2) whether Amendment 7 to the Arkansas Constitution which authorizes voter initiatives and provides for their timing applied to this matter.[1] The court then continued its stay order until retrial of the contempt hearing had occurred and denied the QC members' request for writ of prohibition.

On remand, the circuit court held Amendment 7 was inapplicable to local option measures like Act 1357 and thus had no effect on the contempt proceedings. The circuit court did not address the representation issue. It also found the QC members were subject to the contempt powers of the court, that they had acted contemptuously, and had not attempted to purge themselves. However, the court concluded the "appropriate remedy for the separate respondents' contempt is to assess

---

[1]If Amendment 7 applied, the original presentation of the petition to the QC, as well as the petition for writ of mandamus in the circuit court, may have been untimely.

no further punishment." Shieffler v. Dean, No. 99-233 (Ark. Cir. Ct. Phillips County Oct. 5, 2000). QC members did not appeal. Instead, five days before the circuit court issued its order, they filed the present case in the Western District of Arkansas alleging a host of federal statutory and constitutional violations. Appellants assert violations of the 1964 Civil Rights Act and the 1965 Voting Rights Act, and claim Amendment 7 and Arkansas Act 1357 violate the First and Fourteenth Amendments to the U.S. Constitution.

Appellees filed a motion to dismiss under Fed. R. Civ. P. 12(b)(1). The district court converted the 12(b)(1) motion into a motion for summary judgment under Fed. R. Civ. P. 56 and granted summary judgment, reasoning it lacked jurisdiction because appellants' claims were barred by the Rooker-Feldman doctrine.[2]

## II

We review a district court's determination as to its lacking subject matter jurisdiction de novo. Lemonds v. St. Louis County, 222 F.3d 488, 492 (8th Cir. 2000).

---

[2]QC members also appeal the district court's conversion of appellees' 12(b)(1) motion into a motion for summary judgment. Because we reverse on the basis of Rooker-Feldman, we need not rule on whether the conversion was proper. However, it does appear to fit within the exception noted in Van Leeuwen v. United States Postal Service, 628 F.2d 1093 (8th Cir. 1980), as both parties submitted exhibits apart from the pleadings, and were thus possibly on constructive notice that the court would treat the motion as one for summary judgment. See also Layton v. United States, 919 F.2d 1333, 1335 n.4 (8th Cir. 1990) (noting and preserving the Leeuwen exception). Moreover, the Rooker-Feldman issue is wholly legal, both parties had briefed it, and the QC members themselves supplied the court with the relevant state court decisions and transcripts.

The Rooker-Feldman doctrine "recognizes that, with the exception of habeas corpus petitions, lower federal courts lack subject matter jurisdiction over challenges to state court judgments." Id. The doctrine precludes district courts from obtaining jurisdiction both over the rare case styled as a direct appeal, Rooker v. Fidelity Trust Co., 263 U.S. 413, 416 (1923), as well as more common claims which are "inextricably intertwined" with state court decisions. District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 483 (1983). The doctrine has its foundation in the Supreme Court's appellate jurisdiction statute, as well as a "concern[] with federalism and the proper delineation of the power of the lower federal courts." Lemonds, 222 F.3d at 495; 28 U.S.C. § 1257.

This court has applied the "inextricably intertwined" prong of Rooker-Feldman by analyzing the effect the requested federal relief would have on the state court judgment. Lemonds, 222 F.3d at 493. Rooker-Feldman bars jurisdiction if a federal claim would succeed only "to the extent that the state court wrongly decided the issues before it." Pennzoil Co. v. Texaco, Inc., 481 U.S. 1, 25 (1987) (Marshall, J., concurring); see Snider v. City of Excelsior Springs, 154 F.3d 809, 911 (8th Cir. 1998); Charchenko v. City of Stillwater, 47 F.3d 981, 983 (8th Cir. 1995).

However, not every federal claim which would cast doubt on a state court judgment is barred by Rooker-Feldman. We have noted the inextricably intertwined analysis may be inapplicable where federal plaintiffs have not been given a reasonable opportunity to raise their federal claims in the state proceedings. See Lemonds, 222 F.3d at 495-96 ("we recognize that some courts have declined to apply [Rooker-Feldman] where the federal plaintiffs lacked a reasonable opportunity, through intervention or otherwise, to litigate their claims in state court"); see also Niere v. St. Louis County, 305 F.3d 834, 836-37 (8th Cir. 2002). This position is in accord with the views of other circuits. See, e.g., Brown & Root, Inc. v. Breckenridge, 211 F.3d 194, 201 (4th Cir. 2000) (noting that Rooker-Feldman does not bar a claim where a party lacked a reasonable opportunity to raise the issue in

state proceedings); Long v. Shorebank Dev. Corp., 182 F.3d 548, 558 (7th Cir. 1999) ("an issue cannot be inextricably intertwined with a state court judgment if the plaintiff did not have a reasonable opportunity to raise the issue in state court proceedings"); Dale v. Moore, 121 F.3d 624, 626 (11th Cir. 1997) (noting that Rooker-Feldman does not bar a claim where a party lacked a reasonable opportunity to raise the issue in state proceedings); Moccio v. New York State Office of Court Admin., 95 F.3d 195, 199-200 (2d Cir. 1996) (same).

In the immediate case, appellants did attempt to raise their federal claims before the Arkansas Supreme Court. The district court noted the QC members asserted violations of the federal Civil Rights Act as well as the First Amendment. Simes v. Huckabee, No. 2:00CV174 at 6 n.5 (E.D. Ark. Sept. 30, 2002). In addition, their petition for writ of certiorari to the Arkansas Supreme Court indicates they also alleged violations of the Thirteenth, Fourteenth, and Fifteenth Amendments. Appellees' Separate App. at 205-06. However, the Arkansas Supreme Court declined to address any of appellants' federal claims. The three issues it ordered briefed in Dean I are all issues of state law, and it treated them as such in Dean II.

The court in Dean II first decided under Arkansas law, the duty to call an election imposed by Act 1357 was ministerial and could be enforced by mandamus. Dean II, 6 S.W.3d at 92-93. It next held, again under Arkansas law, the circuit court and not the chancery court had jurisdiction. Id. at 448-49. The court then considered the issue of representation in some detail, and remanded the case to the circuit court for it to determine both whether QC attorney Simes violated Rule 64(b) of the Arkansas Rules of Civil Procedure, as well as whether Amendment 7 to the Arkansas constitution applied in this case. Id. at 94-98. The court acknowledged the QC members' federal claims, but did not address them in even summary fashion. Id. at

-8-

90 (stating that QC members "further asserted that the trial court's order was unconstitutional.").[3]

This court has not had occasion to decide whether Rooker-Feldman prevents a district court from obtaining jurisdiction over federal claims where a state court declined to address the same claims in state proceedings. Other circuits faced with this issue have held Rooker-Feldman inapplicable under such circumstances.

In Gulla v. North Strabane Township, 146 F.3d 168 (3d Cir. 1998), the federal court plaintiffs initially contested a subdivision approval in a state court of common pleas. Though they alleged federal due process and equal protection violations, the state court dismissed their appeal for lack of standing without adjudicating their constitutional claims. Id. at 172. Reversing the district court's holding that Rooker-Feldman barred jurisdiction, the Third Circuit held Rooker-Feldman was inapplicable where the merits of the federal claims were not reached in the state court proceeding: "Since [plaintiffs] could not obtain an adjudication of their claims in state court, they are not precluded from raising their constitutional claims in the federal forum." Id. at 172-73; see also Brokaw v. Weaver, 305 F.3d 660, 667-68 (7th Cir. 2002); Whiteford v. Reed, 155 F.3d 671, 674 (3d Cir. 1998) ("this court has consistently held that where a state action does not reach the merits of a plaintiff's claims, then Rooker-Feldman does not deprive the federal court of jurisdiction"); Mullins v. Oregon, 57 F.3d 789, 792 (9th Cir. 1995) (holding Rooker-Feldman inapplicable where a state

---

[3]Because appellants filed their federal claim before the circuit court's decision on remand, we need not apply Rooker-Feldman analysis to the circuit court's Oct. 5, 2000 order, though we note the circuit court also decided only state law issues. See Lemonds, 222 F.3d at 493 n.4 ("Because the federal suit was filed prior to the decision of the Missouri Court of Appeals, we focus on the opinion of the Missouri Circuit Court for St. Louis County."); see also Gulla, 146 F.3d at 170 (applying Rooker-Feldman only to the state trial court decision where the federal claim was filed while a state appeal was pending).

court did not consider federal plaintiffs' constitutional claims); Marks v. Stinson, 19 F.3d 873, 885 n.11 (3d Cir. 1994) (stating that a federal court is not barred from hearing constitutional claims where they had not been determined by state court); 18 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 4469.1 (2002) ("A decision not on the merits also does not oust federal jurisdiction to decide on the merits.").

The Ninth Circuit applied a similar analysis in Robinson v. Ariyoshi, 753 F.2d 1468 (9th Cir. 1985), vacated and remanded on other grounds, 477 U.S. 902 (1986). In that case, parties adversely affected by a Hawaii Supreme Court ruling sua sponte altering the existing distribution of water rights petitioned for rehearing. The Hawaii Supreme Court granted rehearing, but declined to consider the federal constitutional challenges asserted. Id. at 1470-71. The unsuccessful parties then successfully sued in federal district court alleging violations of federal due process. Id. at 1471. On appeal, the Ninth Circuit held Rooker-Feldman as being inapplicable, stating:

> Rooker made it clear that the only constitutional questions arising from a state proceeding on which the Supreme Court considered itself to be the final arbiter, were those that "actually arose in the cause" in which a full hearing was held and where the judgment was responsive to the issues. Otherwise, if Rooker were a blanket jurisdictional bar precluding the litigation of claims even if there had been no actual state court opportunity to litigate them, Rooker would swallow the "full and fair opportunity to litigate" limitation to res judicata clearly established elsewhere by the Supreme Court.

Id. at 1471-72.[4] Though not squarely presented with the precise issue, this court has also suggested where a state court is faced with federal and state claims, but rules only on the state issues, Rooker-Feldman does not bar a later federal suit. See Bechtold v. City of Rosemount, 104 F.3d 1062, 1065 (8th Cir. 1997) ("[Plaintiff] could conceivably escape the dictates of Rooker-Feldman if the Minnesota court had decided the issue exclusively under a state constitutional due process principle not included in federal due process jurisprudence.").

As the above cases demonstrate, federal plaintiffs cannot be said to have had a reasonable opportunity to raise their federal claims in state court where the state court declines to address those claims and rests its holding solely on state law. We have noted the Rooker-Feldman doctrine is founded upon principles of federalism. However, the district court's holding in this case extends such doctrine far beyond the deference to our state colleagues which federalism counsels. Were the district court's reasoning to stand, defendants in state court would be placed in the following quandary: if they do not raise their federal claims in the state proceedings, they run the real risk of not being able to bring them subsequently in federal court. Feldman, 460 U.S. at 482 n.16 ("By failing to raise his claims in state court a plaintiff may forfeit his right to obtain review of the state-court decision in any federal court."). But if they do raise federal claims in their state court defense, and the state court declines to address them, then according to the district court in this case they are also barred from bringing those claims in federal court. No principle of federalism suggests or requires such a result. As the Eleventh Circuit has stated, "[s]uch a harsh rule might deprive the plaintiff of any forum, state or federal, where he has a

---

[4]While the Rooker-Feldman holding of Robinson has never been overruled, a Ninth Circuit district court has questioned its validity as binding authority within that circuit due to the fact that upon remand, the Ninth Circuit ultimately dismissed the case on ripeness grounds, another jurisdictional issue. Lefcourt v. Superior Court, 63 F. Supp. 2d 1095, 1100 (N.D. Cal. 1999). Though Robinson was vacated on other grounds, the rationale underlying the decision remains persuasive.

reasonable opportunity to present his federal constitutional claims, a result arguably contrary to the requirements of due process." Wood v. Orange County, 715 F.2d 1543, 1547 (11th Cir. 1983). The rationale for applying the Rooker-Feldman doctrine even where constitutional claims are brought in federal court is because state courts are equally competent in deciding federal constitutional issues. See Worldwide Church of God v. McNair, 805 F.2d 888, 891 (9th Cir. 1986). However, to woodenly apply the doctrine where the state court passed on the constitutional issues is to divorce the doctrine from its rationale.

While we hold the Rooker-Feldman doctrine does not bar federal claims brought in federal court when a state court previously presented with the same claims declined to reach their merits, we emphasize a state court need not undertake extensive analysis of every federal claim before it, regardless of merit, in order for Rooker-Feldman to bar a later federal suit. A state court need only indicate it has considered, reached the merits, and rejected the federal claims in order for that doctrine to apply. Gulla, 146 F.3d at 172 (holding in cases where a state court considers and rejects a claim on its merits, "[A] paucity of explicit analysis in the court's opinion will not strip the holding of its validity for purposes of Rooker-Feldman's jurisdictional bar.").

III

The district court's order granting summary judgment is, for all the reasons stated above, reversed.

_____