Constance Bolin YOUNG *v.* William Kelly YOUNG

93-949                                    872 S.W.2d 856

Supreme Court of Arkansas
Opinion delivered March 28, 1994

*Pettus Law Firm*, by: *E. Lamar Pettus*, for appellant.

*Jones, Hixson & Jones*, by: *Lewis D. Jones* and *J. Scott Hardin*, for appellee.

STEELE HAYS, Justice. This is a contempt proceeding involving a property settlement in divorce. In a hearing requested by William Young (appellee) to locate some of the marital property, Constance Young (appellant) refused to answer questions on the basis of her Fifth Amendment rights. The trial court found no legitimate Fifth Amendment privilege and that any privilege she might have had was waived. Mrs. Young still refused to answer and was found in contempt. She brings this appeal from the order requiring her to answer and from the order of contempt. We affirm the trial court.

The Youngs were divorced in 1986 in Dallas County, Texas.

The property settlement agreement left the bulk of the household effects to be divided later and provided for the appointment of a receiver in the event no agreement was reached. Mrs. Young was awarded the residence for three years, at which time it was to be sold. Mr. Young was to lend Mrs. Young $10,000 a month for those three years, to be repaid when the house was sold.

In May 1988, a receiver was appointed to inventory the furniture. It was valued at $1,869,305.00 and in 1989 the court divided the furniture, one-half to each party. The residence did not sell, and in October of 1991 the court appointed a receiver to sell the property.

Early in 1992, Mr. Young sought a preliminary injunction against Mrs. Young alleging she had forcibly removed various fixtures from the house, i.e., mantels, paneling, fountains, etc., to block a sale by discouraging prospective buyers. Mr. Young requested sanctions against further destruction of the home or removal of its fixtures. In February 1992, a Texas district court awarded Mr. Young $3,247,171.97 against Mrs. Young for breach of contract, emotional distress, and exemplary damages. This judgment was reduced by $1,800,000.00 when Mr. Young purchased the marital home.

Mr. Young then filed the judgment in the circuit court of Washington County, Arkansas. Subsequently, approximately five self-storage units of furniture and fixtures from the home were discovered in Springdale, Arkansas. A judicial sale of that property was held, which reduced the judgment by another $1,000,000.00.

In May of 1993 Mrs. Young was tried and convicted of the offense of mail fraud in connection with a plot to bomb the marital home. She was sentenced to twenty-four months in prison. Mr. Young continued efforts to discover the remaining fixtures and furniture. He requested a hearing and Mrs. Young appeared for oral deposition on March 25, 1993, but refused to answer questions as to the whereabouts of the property on the basis of self-incrimination. On May 7, 1993, the trial court found Mrs. Young had no legitimate Fifth Amendment privilege and issued an order compelling discovery and requiring Mrs. Young to answer all questions concerning the whereabouts of the property. The

May 7th order did not specify a date for the discovery as ordered, so on May 13, a judge sitting in exchange modified the May 7th order by ordering Mrs. Young to appear on May 15.

Mrs. Young again refused to answer specific questions on the basis of self-incrimination. On May 17, Mr. Young filed a petition for contempt and after a hearing the trial court entered an order on May 27, finding there was no Fifth Amendment privilege, and alternatively, a waiver of the privilege. Mrs. Young was found in contempt of the May 7, 1993, order and the trial court directed the sheriff to arrest and incarcerate her. She appeals from the orders of May 7 and May 13 and from the finding of contempt.

Initially we note that an order of contempt is a final, appealable order. *Frolic Footwear* v. *State*, 284 Ark. 487, 683 S.W.2d 611 (1985); *Taylor* v. *Taylor*, 26 Ark. App. 31, 759 S.W.2d 222 (1988). Moreover, the appeal brings up, in addition to the contempt order, the two earlier orders on which the contempt order was based and which Mrs. Young also challenges. ARAP Rule 2(b).

I

Mrs. Young contends she had a right to assert her privilege not to incriminate herself under the Fifth and Fourteenth Amendments to the United States Constitution and art. 2, § 8 of the Arkansas Constitution. The trial court rejected that contention and, in the alternative, found that the privilege was waived. We sustain the trial court on the ground of waiver.

Mrs. Young cites only *Dunkin* v. *Citizens Bank of Jonesboro*, 291 Ark. 588, 727 S.W.2d 138 (1987), pertinent to this issue. In that case Mrs. Dunkin, defending a wrongful death claim arising from the homicide of her estranged husband, refused to answer interrogatories propounded to her on the grounds that her answers might tend to incriminate her. The trial court ordered her to respond and, when she still refused, struck her answer asserting self-defense.

We affirmed the order, noting that ARCP Rule 37(d) provides that the failure to serve answers or objections to interrogatories "*may not be excused* on the ground that the discovery sought is objectionable *unless the party failing to act has applied for a protective order* as provided in Rule 26(c)." (Emphasis in original text.) Since Mrs. Dunkin had not asserted the privilege in

a timely and proper manner, it was rejected. As to the substantive issue, the opinion said, "The privilege applies alike to civil and criminal proceedings whenever the answers might tend to subject the party giving it to criminal responsibility." *Camelot Group Ltd. v. W.A. Krueger Co.*, 486 F.Supp. 1221 (S.D.N.Y. 1980).

Relying on this general statement from *Dunkin,* the trial court in this case concluded there was little chance that appellant would be subjected to criminal prosecution. The *Dunkin* case, however, did not reach the necessity of showing the incriminating nature of each question asked, nor was the case decided on that basis.

We have found no other cases of our own on the question of proving the claim of a Fifth Amendment privilege, so we have turned elsewhere for guidance.

In a leading case in this area, *In Re Folding Carton Anti-Trust Litigation*, 609 F.2d 867 (7th Cir. 1979), the court said:

> We cannot agree that a witness' constitutional privilege against self-incrimination depends upon a judge's prediction of the likelihood of prosecution. Rather, we conclude that it is only when there is but a fanciful possibility of prosecution that a claim of fifth amendment privilege is not well taken. . . .

> When a witness can demonstrate any possibility of prosecution which is more than fanciful he has demonstrated a reasonable fear of prosecution.

In *Choi* v. *State*, 560 A.2d 1108 (Md. 1989), the state had relied on the prosecuting attorney's representation in the trial court that the witness "was not at risk of prosecution." To that the court stated:

> The rarity of prosecutions under a particular statute, or a prosecuting attorney's indication in a particular case that he will not prosecute, are not sufficient to defeat a claim of privilege under the standards of *Hoffman* v. *United States*, 341 U.S. 479 (1951) and other cases.

*See also United States* v. *Miranti*, 253 F.2d 135 (2d Cir. 1958); *In. Re Grand Jury Proceedings (Samuelson)* 763 F.2d 321 (8th Cir. 1985).

■ Here, evidence that Mrs. Young had removed fixtures from the marital home would have subjected her at least to the *possibility* of felony criminal penalties in Texas for tampering with and damaging the property of another, notwithstanding the fact that she had an interest in the property. Texas Cr. Code, § 28.03, § 28.05. The *probability* of such prosecution is not controlling, nor are assurances by Mr. Young and the receiver that they will not promote prosecution.

■ As to the questions Mrs. Young refused to answer, we believe they sought to elicit information that can be withheld under a Fifth Amendment claim. Mrs. Young was withholding answers to the whereabouts of the furniture and fixtures and to any dealings she might have had in transporting that property. A witness is not required to show the testimony she declines to give will result in direct criminal exposure, it is enough if the information, used with other evidence, would lead to a conviction. *Kastigar* v. *United States*, 406 U.S. 212 (1972). It is stated in *United States* v. *Johnson*, 488 F.2d 1206 (1st Cir. 1973), quoting from *Hoffman* v. *United States*, 341 U.S. 479 (1951):

> The privilege protects not only answers which directly reveal criminal activity, but also those that might furnish a link in the chain of evidence necessary to convict.

In sum, we believe the nature of this testimony and the *possibility* of prosecution are sufficient to create a valid Fifth Amendment privilege.

## II

■ The trial court held that even if Mrs. Young did have a Fifth Amendment claim, it was waived. This conclusion was based on two things, first a letter from her lawyer to Mr. Young's lawyer offering to sell the items "which she removed from the home in Fort Worth." Second, the trial court found Mrs. Young had waived her privilege through two affidavits she filed with the court with "respect to facts concerning the property involved in this case."

■ As to the letter, it will not qualify as a waiver of her privilege as it was not compelled testimony. It is clear from the case law that a waiver can only occur where compelled testimony is involved. Where a disclosure of facts may tend to incriminate

a witness, that tendency is not removed by a showing that the witness had elsewhere made a statement tending to incriminate himself. *Temple* v. *Commonwealth*, 74 Va. 892 (1881), cited in *Ex Parte Berman*, 287 P. 125 (Cal. Dist. Ct. App. 1930). To the same effect see *McCormick on Evidence, supra*, § 140; *In Re Neff*, 206 F.2d 149 (3rd Cir. 1953).

The two affidavits are not included in the record but they were apparently filed by Mrs. Young in connection with the judicial sale of the marital property found in the self-storage units in Springdale. Mrs. Young argues that the affidavits were not made part of the record to the detriment of the opposing side. She then states: "However, appellant does admit. . .these affidavits were offered to show the Notice of Sale was deficient." The argument misconstrues the burden of proof on appeal.

■■ The burden of proving error on appeal is on the appellant, not the appellee. *Looper* v. *Madison Guaranty Savings & Loan Ass'n*, 292 Ark. 156, 292 S.W.2d 225 (1987). It is appellant's burden to bring up a record sufficient to demonstrate error. *Bratton* v. *Gunn*, 300 Ark. 140, 777 S.W.2d 219 (1989). When an appellant fails to demonstrate error we affirm. *Jenkins* v. *Goldsby*, 307 Ark. 558, 822 S.W.2d 842 (1992). We will accept as correct the decisions of the trial court which the appealing party does not show to be wrong. *Blissard Management and Realty, Inc.* v. *Kremer*, 289 Ark. 419, 711 S.W.2d 813 (1984). Although we cannot presume that any portions of the record not designated for appeal will support the trial court's action, we will not reverse the lower court unless the record shows apparent error. *Sharum* v. *Dodson*, 264 Ark. 57, 568 S.W.2d 503 (1978); *Young* v. *Young*, 288 Ark. 33, 701 S.W.2d 369 (1986); *Rhodes* v. *State*, 293 Ark. 211, 736 S.W.2d 284 (1987).

■ The trial court concluded the affidavits constituted a waiver and nothing in the record refutes that. Contrary to Mrs. Young's argument that Mr. Young had failed to include the affidavits in the record, it was incumbent on her to produce a record which reflected that the affidavits did *not* support a waiver. Significantly, Mrs. Young does not deny that the affidavits constituted a waiver, but relies on the fact that they are not in the record. Having failed to demonstrate any error on the part of the trial court in finding there was a waiver, we affirm the trial court on that point.

### III

Several procedural errors are advanced under a second assignment of error. Mrs. Young submits the trial judge should not have ordered her to appear for a deposition one day after the filing of a motion to that effect. However, the trial court, after convening the court on May 13, 1993, stated he was not ruling on Mr. Young's motion, but was amending the May 7 order to specify a date and time for the deposition, namely, May 15 at 10:00 a.m.

The trial court has inherent power to modify an order with or without notice to any party by motion of a party or on its own within ninety days of filing. ARCP Rule 60(b). Presumably the trial court was cognizant of the notice problem, but arguably there was an emergency (Mrs. Young's incarceration was to begin in June) and the court undertook to amend the earlier order under its plenary power to amend or modify within ninety days. *Blissard Management & Realty, Inc.* v. *Kremer*, 284 Ark. 136, 680 S.W.2d 694 (1984).

It is also argued that it was error for one judge, on exchange, to modify the earlier May 7 order of the sitting judge. No authority is cited and we do not find this point to have been made to the trial court.

Mrs. Young insists the trial court erred in holding her in contempt. She argues she was found in contempt of the May 7 order, which only required her to answer questions, and not to appear on a particular date for that purpose. Her brief states:

> Actually, following the logic of the trial court, there could be no contempt of the May 7, 1993 order, but only a contempt of the May 7, 1993 order *together* with the May 13, 1993 order, because the May 7, 1993 order did not provide for a time to appear for deposition. (Brief at 81).

While it is not entirely clear how we are asked to address this argument, we find no support for the point asserted. The Order of Contempt, at R. 133, purports to be "pursuant to the court's orders of May 7, 1993, and May 13, 1993," and that Mrs. Young's refusal to answer questions "was in direct violation of the Orders of this court and was in contempt of the orders of this court." Citing page 260 of the record, Mrs. Young contends the

trial court told her at the May 27, 1993, hearing that she was only in violation of the May 7, 1993, order. However, we cannot identify such comments by the trial court either in the abstract or in the record and the order itself is clearly to the contrary.

For the reasons stated, the orders appealed from are affirmed.

CORBIN, J., not participating.