JONES-BLAIR COMPANY *v.* Lucy HAMMETT, d/b/a
Conway Carpets and Interiors

95-1359                                           930 S.W.2d 335

Supreme Court of Arkansas
Opinion delivered September 30, 1996

*Jeffrey Hines Moore*, for appellant.

*Charles Edward Clawson*, for appellee.

BRADLEY D. JESSON. Jones-Blair Company appeals from a $39,819.90 judgment entered against it in Faulkner County Circuit Court. It seeks a new trial on the ground that its attorney was allowed to withdraw from the case in violation of ARCP Rule 64(b). We agree that a new trial is warranted and therefore reverse and remand.

This appeal was originally filed in the Arkansas Court of Appeals. *See Jones-Blair Co.* v. *Hammett*, 51 Ark. App. 112, 911 S.W.2d 263 (1995). We granted review of the case pursuant to Arkansas Supreme Court Rules 1-2(f)(1) and 1-2(a)(3). Three issues are presented on appeal: 1) whether Jones-Blair may receive a new trial on the ground that its attorney withdrew in violation of ARCP Rule 64(b); 2) whether the trial judge should have granted Jones-Blair's motion to extend time to file its notice of appeal; and 3) whether the evidence is sufficient to support the judgment. We agree with Jones-Blair that it is entitled to a new trial due to the circumstances under which its attorney was allowed to withdraw. We reverse and remand on that ground, making discussion of the other issues unnecessary.

This case has its genesis in a 1982 contract entered into between Jones-Blair, a Texas paint and wall-covering supply company, and Lucy Hammett, doing business as Conway Carpets and Interiors. The business relationship between the parties was, apparently, never a smooth one. In November of 1988, Jones-Blair contacted Faulkner County attorney David Reynolds for the purpose of collecting a $6,779.34 delinquency on Hammett's account. Reynolds filed suit on Jones-Blair's behalf on January 3, 1989. Hammett

answered, denying the allegations in the complaint. She also filed a counterclaim in which she alleged Jones-Blair had committed certain accounting errors, had failed to reimburse her for promotional materials, and had tortiously interfered with her customer contracts.

In the course of his representation, Reynolds took Hammett's deposition and forwarded it to Jones-Blair on May 15, 1989. In a letter accompanying the deposition, Reynolds asked Jones-Blair to conduct a review and advise on how to proceed. Five months later, Reynolds received a letter from credit analyst James Holt. Holt said he had inherited the account from the previous credit manager and noticed there was no correspondence in the file regarding the status of the case. He requested an update and a recommendation on how to proceed.

The record is bereft of any further activity in the case for nearly a year. Then, in August of 1990, David Reynolds was appointed circuit/chancery judge for Faulkner County. He filed a motion to withdraw from the case and asked that his law partner, Richard W. Atkinson, be named attorney of record. Atkinson was so named on October 5, 1990, and the case was set for nonjury trial on February 11, 1991. The record gives no indication that Jones-Blair was notified of this trial setting or of Atkinson's entry of appearance.

For reasons not revealed on the court's docket sheet, the February 11, 1991 trial did not take place. In October of 1992, the case was reset for trial on January 27, 1993. Upon learning of the trial setting, Atkinson wrote to Jones-Blair for the first time. His October 22, 1992 letter reads as follows:

> This appears to be a case which I inherited from a former law partner, David Reynolds. Please find enclosed a copy of a transfer order and a copy of [Hammett's attorney's] letter informing me that the case has been set for trial on January 27, 1993 at 9:00 a.m.

> My file indicates no correspondence with you on this case. I am undertaking at this time a review of the file and a discussion with Judge [David] Reynolds to find out exactly what's going on in this case. Please contact me as soon as possible and let me know how you wish to proceed.

Larry Steele, a credit analyst at Jones-Blair, responded to At-

kinson's correspondence by the following letter dated November 10, 1992:

> According to our records, we charged off the [Hammett] account in the amount of $7222.14 in 1990.
>
> As for further litigation, we would like to have the particulars in regard to fees, court costs, etc...Thank you.

After reading the above correspondence, Atkinson feared that Jones-Blair did not understand that Hammett's counterclaim was still active. He composed the following letter, dated December 3, 1992:

> I am in receipt of your letter of November 10. I am not sure you are aware of the fact that this is still an active case in Faulkner County Circuit Court. Mrs. Hammett has a counterclaim against your company that is still pending. Even if you dismiss your suit against Mrs. Hammett, she is not willing to dismiss the counterclaim. If you do not authorize me, or retain other counsel and appear on the 27th day of January, the judge will enter a default judgment against Jones-Blair.
>
> My fee is $100 per hour. If I do not hear from you within a reasonably short period of time, I will ask the court for permission to withdraw as attorney of record in this case. Looking forward to hearing from you.

Jones-Blair claims it never received this letter.

On January 27, 1993, the day of trial, Atkinson appeared and asked the court for permission to withdraw. He told the court he had had "sparse and uncooperative communication" with Jones-Blair and that he didn't believe he had actually been authorized to act on Jones-Blair's behalf. He further noted that he had sent a letter to Jones-Blair explaining the need to defend the counterclaim and that "up until yesterday afternoon, they didn't return my phone calls, and I've had no further communication with them, and I would ask for leave to withdraw." The court summarily relieved Atkinson from representation, based on Atkinson's claim that Jones-Blair was uncooperative. Atkinson left the courtroom and a nonjury trial proceeded on Hammett's counterclaim. At the close of the hearing, Hammett was awarded $36,191.99 in damages, plus attorney fees. Judgment was entered of record on January 28, 1993.

Jones-Blair did not learn of the January 28 judgment until it received a letter from Hammett's attorney dated May 14, 1993. At Jones-Blair's request, Atkinson filed a motion to set aside the judgment. The motion recited that Jones-Blair believed the only issue to be tried on January 27 was its original action. The motion was denied on August 6, 1993. Over the next few weeks, Jones-Blair obtained new counsel and filed two motions: a motion for extension of time to file an appeal and a motion to set aside the judgment. In the motion to set aside, Jones-Blair asked for a new trial on the ground that Atkinson's withdrawal from the case violated ARCP Rule 64(b). At a hearing on the motions, Atkinson candidly testified that he took no steps to contact Jones-Blair between December 3, 1992, and January 27, 1993 (despite his earlier implication to the court that he had tried to contact Jones-Blair by phone), that he did not move for a continuance, did not stay for the trial, did not notify Jones-Blair that he had withdrawn, and did not send Jones-Blair a copy of the judgment. He further said that, although he remembered typing the letter of December 3, he had no specific recollection of mailing it. The trial judge denied the motion to set aside and made the following pertinent findings, which we summarize below:

> Although there was "some question" whether Jones-Blair received the letter dated December 3, 1992, Jones-Blair was aware of the pending counterclaim.

> There were no communications between Jones-Blair and Atkinson other than the letters of October 22, 1992, November 10, 1992, and the letter of December 3, 1992, "which Jones-Blair did not receive."

> Considering Jones-Blair's November 10 letter and no response to the December 3 letter, Atkinson was well within his rights to think Jones-Blair did not want him to defend them at trial.

> Jones-Blair was negligent in failing to show up for trial and this negligence continued until it became aware of the judgment and took some action to set it aside.

> Considering the November 10, 1992 letter and Atkinson's December 3, 1992 letter, Atkinson was not required to take any more reasonable steps to comply with Rule 64.

Jones–Blair appeals from that order.

We begin our analysis of this case with a discussion of ARCP Rule 64(b). It provides as follows:

> A lawyer may not withdraw from any proceeding or from representation of any party to a proceeding without permission of the court in which the proceeding is pending. Permission to withdraw may be granted for good cause shown if counsel seeking permission presents a motion therefor to the court showing he (1) has taken reasonable steps to avoid foreseeable prejudice to the rights of his client, including giving due notice to his client, allowing time for employment of other counsel; (2) has delivered or stands ready to tender to the client all papers and property to which the client is entitled; and (3) has refunded any unearned fee or part of a fee paid in advance, or stands ready to tender such a refund upon being permitted to withdraw.

There is no question that Rule 64 was not complied with in this case. The appellee concedes as much. However, we detect a misunderstanding of the rule's purpose, and we take this opportunity to address it. It is crucial for a trial court to understand that Rule 64(b) is aimed at protecting the client's interests. The trial court must look at the proposed withdrawal from the point of view of the client, not the attorney. The trial judge's findings of fact evidence a misunderstanding of this concept. The findings focus on whether Atkinson committed any wrongdoing. The focus should have been whether Jones–Blair's interests were protected. Further, the trial court must play an active role in determining whether the requirements of the rule have been met. A bare assertion by an attorney that a client is uncooperative does not justify granting a motion to withdraw. Even if a client is uncooperative or hard to communicate with, neither the attorney nor the court is relieved from insuring that Rule 64 is followed.

We turn now to the question of whether the violation of Rule 64(b) entitles Jones–Blair to a new trial. Jones–Blair contends that the judgment against it should have been set aside pursuant to ARCP Rule 60(c)(1). That rule allows relief in cases where grounds for a new trial are not discovered for more than ninety days after entry of judgment. The ground for new trial asserted in this case is contained in ARCP Rule 59(a)(1): "any irregularity in the pro-

ceedings or any order of court or abuse of discretion by which the party was prevented from having a fair trial." We have no hesitancy in holding that Atkinson's withdrawal in this case prevented Jones-Blair from having a fair trial. However, we have said that a party is not entitled to relief under Rule 60(c) if he has not been diligent in protecting his own interests. *Diebold* v. *Myers General Agency, Inc.*, 292 Ark. 463, 731 S.W.2d 183 (1987). When the court of appeals decided this case, it concluded that Jones-Blair's lack of diligence precluded a new trial:

> The appellant had been aware of the pending counterclaim against it since 1989 and was aware of the trial date as early as Mr. Atkinson's letter of October 22, 1992. The appellant responded to the October 22 letter but made no further attempts to contact its attorney or inquire about the status of the litigation. The appellant did not appear for trial nor did it inquire regarding the results of the trial.

51 Ark. App. 112 at 118; 911 S.W.2d 263 at 266.

In *Diebold* v. *Myers General Agency, supra*, we held that the appellant could not obtain Rule 60 relief because she had not been diligent in protecting her own interests. Mrs. Diebold signed a promissory note to repay money her son Lloyd had stolen. When she defaulted on the note, the holder brought suit against her. She turned the complaint and summons over to Lloyd and Lloyd hired an attorney named Hickman. After that, neither she nor Lloyd had anything more to do with the case. On the day trial was scheduled, Hickman was allowed to withdraw and judgment was entered against Mrs. Diebold. She tried to set the judgment aside pursuant to Rule 60(c). We said that Mrs. Diebold was not entitled to a new trial because her failure to keep tabs on her case was in large measure responsible for the entry of judgment against her.

The *Diebold* case exemplifies the type of conduct which will prevent a litigant from obtaining relief under Rules 60 and 64. Mrs. Diebold did not take a single step to protect her own interests, other than turning the suit papers over to her son, a non-attorney and a person she knew to be irresponsible. She made not one inquiry regarding her case and had no communications whatsoever with her attorney. By contrast, Jones-Blair hired an attorney and kept in contact with him, although somewhat intermittently. When notified of the trial date via Atkinson's October 22 letter, Jones-

Blair responded in a timely fashion, saying it had written off Hammett's debt. Upon receipt of that response, Atkinson realized that Jones–Blair did not appreciate the fact that a counterclaim was still pending, so he wrote the December 3 letter. There is no finding from the trial court that Jones–Blair received the December 3 letter; in fact, the court's findings indicate that Jones–Blair's receipt of the letter was doubtful. Thus, after November 10, Jones–Blair was probably laboring under the false impression that no trial would occur. What we have on Jones–Blair's part is not a callous lack of diligence, but more in the nature of a misunderstanding. This is the crucial difference between this case and *Diebold*. Jones–Blair hired an attorney to appear at trial; it responded when notified of the trial setting; it might well have thought that there would be no trial, since it had dropped its own claim; and it had no knowledge that its attorney had withdrawn. Jones–Blair's failure to follow up on its case, while ill–advised in retrospect, cannot be equated with the type of apathetic behavior that was exhibited in *Diebold*.

We are mindful that a trial court's findings of fact should not be set aside unless clearly erroneous. ARCP Rule 52(a). Actually, we agree with the factual determinations made by the court. However, the court erred in concluding that Jones–Blair was negligent to the extent that Rule 60 relief should be denied. We therefore reverse and remand the case for a new trial.

Reversed and remanded.