Joseph DEAN, Earnest Simes, Geraldine Davis, Clausey Myton, and Arlanda Jacobs *v.* Honorable Randall L. WILLIAMS, Gene Schieffler, and Arnell Willis, Individually and as Chairman and Vice-Chairman of the Helena-West Helena-Phillips County Port Authority, and Turk Corder, Individually, and the Helena-West Helena-Phillips County Port Authority

99-1353 and 99-1364                                   6 S.W.3d 89

Supreme Court of Arkansas
Opinion delivered December 10, 1999

*Wilson & Valley*, by: *J.L. Wilson, J.F. Valley, André K. Valley, Don R. Etherly*, and *E. Dion Wilson*; and *Simes Law Firm*, by: *Alvin L. Simes*, for petitioners.

*Mark Pryor*, Att'y Gen., by: *Brian G. Brooks*, Ass't Att'y Gen., for respondent Honorable Randall L. Williams, Circuit Court of Phillips County.

*Friday, Eldredge & Clark*, by: *William A. Waddell, Jr.*, for separate respondents.

TOM GLAZE, Justice. Initially we had jurisdiction of this case because petitioners requested we issue a writ of prohibition to prevent the circuit court from exercising jurisdiction to hold a show-cause hearing as to whether petitioners should be found in contempt. *See* Sup. Ct. R. 1-2(a)(3). Our clerk accepted this petition and assigned it a case number of 99-1353. Before that petition and accompanying motion for stay could be addressed, the trial court held its hearing and the petition became moot. Because the petitioners filed a timely notice of appeal from the trial court's contempt order, we assumed jurisdiction to decide that final order. That appeal was assigned number 99-1364. *See* Ark. R. App. P. 2(b); *Young v. Young*, 316 Ark. 456, 872 S.W.2d 856 (1994). We also granted the stay and expedited the appeal. We have consolidated the petition for writ of prohibition and the appeal for purposes of decision making.[1]

The original petitioners, now appellants, Joseph Dean, Earnest Simes, Geraldine Davis, Clausey Myton, and Arlanda Jacobs, and the six other Phillips County Quorum Court members were sued in their official capacity by a taxpayer and two members of the Helena-West Helena Port Authority to require the eleven-member quorum court to call an election, so the electors of Phillips County could vote for or against a county sales tax. After the circuit court issued a mandate ordering the quorum court to set an election date, five of the members (petitioners/appellants herein) refused to comply. The trial court then gave the petitioners/appellants time to obey its order or be incarcerated. When the petitioners/appellants failed to comply with the court's directive, they were put in jail. However, petitioners previously filed their petition for a writ of prohibition here, asking us to stay the lower court's contempt order and to hold that the circuit court acted outside its jurisdiction. They further asserted that the trial court's orders was unconstitutional.

---

[1] In writing this opinion, we at different times refer to petitioners as petitioners/appellants and to respondents as respondents/appellees.

As has already been mentioned, besides their request for us to issue a writ of prohibition, petitioners subsequently filed a notice of appeal, and generally argue they pursued their request for a writ because they believed an appeal was an inadequate remedy. In sum, petitioners submitted that such inadequacy justified their request for an extraordinary writ. Because the circuit court's contempt order was pending below and on appeal, we granted the petitioners' motion to stay, and we expedited matters so we could consider at least those issues touching on the contempt order. We attempted to define those issues to be (1) whether the petitioners had a duty to call an election on the proposed sales tax, (2) whether they could be held in contempt for refusing to call an election, and (3) whether the circuit court had jurisdiction to enter the orders it issued. Before turning to those issues, we will set out a few additional details as to when and how this litigation got to this stage.

This case arises out of community and political discord attributed to the operation of the Helena-West Helena-Phillips County Port Authority and a project known as Slack Water Harbor. About ten years ago, the voters of Phillips County approved a one percent sales tax which aided in the industrial development of this area. That tax expires on or shortly after January 1, 2000.

In an apparent anticipation that the Phillips County voters would need to approve a new one percent sales tax to continue the port authority project and other important matters in January 2000, State Representative Arnell Willis sponsored a bill in the General Assembly which authorized the calling of an election to be held on a county sales tax upon the filing of initiative petitions by the legal voters of the county. That bill was passed, then approved on April 12, 1999, and subsequently designated Act 1357 of 1999. On August 23, 1999, Representative Willis and Eugene Schieffler, as members of the port authority, filed initiative petitions with the county clerk as required under Act 1357. Under the Act's terms, the Phillips County Quorum Court is required to submit the question of the levying of the sales tax to the electors of the county, and in doing so, the quorum court must set the election to be held within 120 days from the filing of the petitions. Using the August 23, 1999 date, the election could be held no later than December 21, 1999.

On September 14, 1999, a proposed ordinance — which would have referred the sales tax measure to the Phillips County voters at a special election to be held on October 26, 1999 — was presented to the Phillips County Quorum Court, but the quorum court rejected the proposal by a vote of five in favor and six against. The ordinance was again considered at an October 12, 1999 meeting, and the same six-to-five vote rejected the calling and setting of an election by voting to table the ordinance indefinitely. The six members voting against the ordinance and in tabling it were Trudie Miller and the same five petitioners described above as the members who eventually were found in contempt for continuing their decision not to call an election.

On October 14, 1999, Willis, Schieffler, and Turk Corder, a Phillips County taxpayer, elector, and former quorum court member, filed a petition for a writ of mandamus against all the Phillips County Quorum Court members, seeking an order from the circuit court compelling the quorum court members, in their official capacity, to enact the ordinance previously submitted and rejected by them and to order them to provide for an election to be held prior to December 1, 1999. After holding a hearing on the matter on November 12, 1999, the circuit court, among other things, granted the requested mandamus relief, and ordered the quorum court to hold a hearing by November 15, 1999, and enact the proposed ordinance. When the Phillips County Quorum Court failed to have a sufficient number of its members meet to vote on the ordinance, the circuit court set a hearing to be held on November 18, 1999, so the members could show cause why they should not be held in contempt for their refusal to comply with the circuit court's November 12 order.

At the November 18 show-cause hearing, the five members identified as Dean, Simes, Davis, Myton, and Jacobs appeared, but after some controversy over whether they were represented by counsel and entitled to a continuance, they chose to invoke their Fifth Amendment rights, thereby refusing to offer any testimony justifying their continuing refusal to comply with the circuit court's November 12 mandate. Accordingly, the trial court ordered that, if the five members did not enact the proposed ordinance before1:00 p.m., November 19, 1999, they would be incarcerated until they

complied with the court's November 12 order.[2] The five members went to jail, but prior to or at about the same time the members went to jail, they filed their petition for writ of prohibition, and a motion for stay with our court. They had previously filed a notice of appeal on November 12 from the lower court's November 12 order, and later, a notice of appeal on November 18 from the trial court's November 18 contempt order. By per curiam, we granted a stay on November 22, 1999, directed the transcript of the proceedings below be filed with us, and set a briefing schedule. From a reading of the parties' pleadings and partial record, we identified three legal issues that we believed we could consider and decide. An oral argument was heard on November 30, 1999 — the day after the parties filed their respective, simultaneous briefs. The parties and this court at oral argument identified issues in addition to those we asked to be briefed, but upon review of the parties' record and a study of their briefs and arguments, we find ourselves unable to fully decide all three issues contained in our November 22, 1999, per curiam.

The first issue is one we can address since the parties raised and developed the issue before or at the time of the November 12 hearing. That issue, restated, is whether petitioners had a duty to call an election under the provisions of Act 1357. In arguing this question, however, petitioners not only deny having such a duty, but also contend the trial court had no jurisdiction to issue a writ of mandamus against them because the Phillips County Quorum Court is a legislative body. Petitioners urge that mandamus lies only against a public official who has failed to perform a ministerial duty and such a remedy cannot prevail against a legislative body. Citing *Wells v. Purcell*, 267 Ark. 456, 592 S.W.2d 100 (1979), they further claim that to permit a court to issue mandamus against a legislative entity like a quorum court would violate the separation of powers prescribed by Ark. Const. art. 4, § 1.

The *Wells* decision relied on by petitioners is one where a taxpayer sought a writ of mandamus against General Assembly officials ordering them to adjourn or compelling them to certify facts of their disagreement over their adjournment date to the

---

[2] Quorum court member Trudie Miller, who was one of the six members refusing to enact the ordinance calling an election, did not appear at the circuit court's show-cause hearing and she was not incarcerated.

Governor, so he could, under his constitutional authority, declare an adjournment. The *Wells* court denied the taxpayers' writ request, stating that, under the common law, the writ of mandamus did not run to the legislative branch of government. *Wells,* 267 Ark. at 462, 592 S.W.2d at 104. The *Wells* court further determined that there was no statute that authorized the courts to issue the writ to the legislature and that the writ could not be issued to the legislature, even when the duty sought to be compelled is clear and unmistakable.

■ We certainly have no disagreement with the foregoing statements of the law. However, our difference with the petitioners on this matter is that the case now before us involves the reservoir of legislative power the people of Arkansas provided themselves when they passed Amendment 7 to the Arkansas Constitution, commonly known as the Initiative and Referendum or I & R Amendment. The Amendment in this respect provides as follows:

> The legislative power of the people of this State shall be vested in a General Assembly, which shall consist of the Senate and House of Representatives, *but the people reserve to themselves the power to propose legislative measures, laws and amendments to the Constitution, and to enact or reject the same at the polls independent of the General Assembly; and also reserve the power, at their own option, to approve or reject at the polls any entire act or any item of an appropriation bill.* (Emphasis added.)

In the instant case, it is not the Phillips County Quorum Court and its legislative power that respondents/appellees Schieffler, Willis, and Corder have asked the circuit court to control or force into some action. Rather, they merely are seeking to have the quorum court submit the county sales tax issue to the voters because the electors filed the required number of initiative petitions and signatures provided under the provisions of Act 1357 and Amendment 7.

■ Act 1357's provisions are illustrative of the point we make. For example, the Act provides two avenues by which a county-wide sales and use tax may be adopted by a vote of the people of Phillips County: (1) The quorum court *may* on its own volition call an election for such purpose or (2) electors may do so by initiative petition, like the situation now before us. Under the first method, the quorum court must exercise its legislative discretion when

deciding if it wishes to call an election to refer a sales-tax question to the vote of the people in Phillips County. On the other hand, the second legal avenue to allow Phillips County voters to vote for or against a sales tax is *solely* within the power of the electors who correctly comply with the Act 1357 and Amendment 7 initiative-petition requirements. In these circumstances, we are simply not confronted with a separation-of-power question like the one posed in *Wells*.

The case before us is not unlike several cases this court has previously decided. While these earlier cases involved referendum petitions and the legislative functions of a city council, we find them controlling here. In the *City of North Little Rock v. Gorman*, 264 Ark. 150, 568 S.W.2d 481 (1978), the issue centered on whether an ordinance increasing rates for electricity sold by the City of North Little Rock was a legislative measure that electors could refer to the city voters pursuant to Amendment 7, or if the ordinance was merely administrative in nature, making it an improper subject matter for a referendum. This court held the rate ordinance was a legislative measure which was subject to referendum, and once the electors of the city complied with the filing of the sufficient number of signatures and initiative petitions required by Amendment 7, the only function remaining to be performed was the city council's ministerial responsibility and duty to call the election. The *Gorman* court concluded, stating the well-established rule that a failure to perform a ministerial duty is enforceable by a writ of mandamus. *See also Gregg v. Hartwick*, 292 Ark. 528, 731 S.W.2d 766 (1987); *Lewis v. Conley*, 258 Ark. 715, 529 S.W.2d 132 (1975).

For the foregoing reasons, we conclude that the duty imposed on the Phillips County Quorum Court in these circumstances was purely a ministerial one enforceable by mandamus. However, before leaving the first issue, we note petitioners' claim that, under these facts, mandamus is a remedy that should be sought in chancery court. In support of their argument, they cite Ark. Code Ann. § 14-14-916(a) (Repl. 1998), and argue that jurisdiction is vested in the chancery court to hear and determine petitions for writs of mandamus, injunctions, and all other actions affecting the submission of any proposed county initiative or referendum

petitions.[3] Amendment 7 also provides that the sufficiency of all local initiative and referendum petitions must be decided first by the county or city clerk, as the case may be, subject to review by the chancery court.

The answer to which court, circuit or chancery, has jurisdiction of this matter is found in the case of *Catlett v. Republican Party of Ark.*, 242 Ark. 283, 413 S.W.2d 651 (1967). There, this court explained the chancery court's limited power in cases involving elections as follows:

> Wherever the established distinction between equitable and common law jurisdiction is observed, as it is in this State, courts of equity have no authority or jurisdiction to interpose for the protection of rights which are merely political, and where no civil or property right is involved. In all such cases, the remedy, if there is one, must be sought in a court of law. The extraordinary jurisdiction of courts of chancery can not, therefore, be invoked to protect the right of a citizen to vote or to be voted for at an election, or his right to be a candidate for or to be elected to any office. Nor can it be invoked for the purpose of restraining the holding of an election, or of directing or controlling the mode in which, or of determining the rules of law in pursuance of which, an election can be held. These matters involve in themselves no property right but pertain solely to the political administration of government.

*Catlett* was cited more recently in *Moorman v. Lynch*, 310 Ark. 525, 837 S.W.2d 886 (1992), where Amendment 7 was in issue. There, this court held chancery court had jurisdiction only to review the action of the county or city clerk in determining the sufficiency of the petitions, and further concluded that proper jurisdiction of a suit to question the validity of a proposed measure lies in circuit court.[4] *Moorman*, 310 Ark. at 528, 837 S.W.2d 888. Thus, our case law is decidedly clear that chancery court does not have jurisdiction over the type of issues raised in the litigation now before us.[5]

---

[3] At this point, we note that the respondents/appellees argued below and before us that this and the other initiative and referendum statutes do not apply here because Act 1357 is a special procedure like local-option statutes. They contend Amendment 7 and its enabling statutes are inapplicable. We discuss this matter later in this opinion.

[4] The record reflects that no question was raised by anyone concerning the sufficiency of the signatures or initiative petitions filed with the Phillips County Clerk in this case, so no chancery court review was necessary under Amendment 7.

[5] We note that, under the first issue, petitioners also submit that the mandamus action against them was premature, because they, as quorum court members, have merely tempora-

■ While we are able above to decide that the circuit court here has jurisdiction in this case and it has authority to mandate the Phillips County Quorum Court to perform a ministerial duty such as is required under Act 1357 and Amendment 7, we are unable to decide without additional argument whether the petitioners, as quorum court members, can be held in contempt for refusing to enact the ordinance needed for calling the election provided under the Act.

This case became particularly difficult after one of the eleven quorum court members, Eddie Schieffler, at the November 12 hearing, filed an objection to attorney J.L. Wilson representing the quorum court. Eddie Schieffler was one of the five members who had voted in favor of calling the sales tax election. Immediately after the November 12 hearing started, but before testimony was taken, Eddie Schieffler suggested Wilson had not been hired by the quorum court. The record also reveals Alvin L. Simes had a contract which authorized him to represent the entire quorum court. Although Simes and one of the petitioners, Mr. Dean, indicated the quorum court had approved Simes' associating Wilson, the record shows that approval was done by a five-to-two vote and that six votes were needed to amend Simes' contract. Moreover, the county judge apparently did not approve any modification of Simes' contract.

After considerable exchange between the judge, Wilson, and Simes, the judge disqualified Wilson as an attorney, but Simes remained attorney of record even though he apparently did not continue his representation after Mr. Wilson was disqualified. Before departing, Mr. Wilson noted his disagreement with the judge's ruling and stated that, under the rules, if the "court disqualifies an attorney, he's entitled to an immediate appeal and a stay of the proceedings until that is determined." The judge responded, "Well, take any action you think you need to take . . . I don't have any problem with that." Wilson said that he wanted the record to

rily postponed action on the proposed ordinance calling the election, and therefore have not as yet violated Act 1357. Petitioners' actions (and failures to act) belie any contention that they have any intent to comply with the Act, especially since while they theoretically could set an election to be held before the 120-day limitation expires, any election date now set in December 1999 will prevent many statutes bearing on election events, such as providing for absentee ballots and fixing precinct boundaries, from being complied with because those events must be done no later than thirty days before an election.

show that he had been disqualified and that, by continuing with the hearing, his client's rights would be prejudiced.

The November 12 hearing proceeded without Wilson or Simes being present, even though Mr. Simes had not been disqualified and had not asked to withdraw from the proceeding. Nor had opposing counsel objected to Mr. Simes' representation. Respondents' attorney, Mr. Waddell, proceeded with his case and at the conclusion of the hearing, the trial court granted the writ of mandamus requested by Schieffler, Willis, and Corder.

Additional confusion continued after the November 12 hearing when Mr. Simes, with his clients, attended the November 18 show-cause hearing to determine if the petitioners had willfully violated the trial court's November 12 order and therefore were in contempt. Simes pressed the judge to rule Simes disqualified on the basis that he had a conflict, but the judge refused to do so. Attorney John Walker also appeared at the November 18 hearing and, immediately prior to its commencement, Mr. Walker revealed he had been approached by the five petitioners regarding appearing on their behalf individually. Walker conceded he had not been hired by the Phillips County Quorum Court. He urged that the petitioners were entitled to notice served on their counsel and because Simes had a conflict in representing petitioners, petitioners should be entitled to other counsel. The judge countered, suggesting counsel had given the court no notice of Mr. Walker's possible representation of the petitioners or of any need for a continuance. At the end of the counsels' and judge's exchanges, the trial court proceeded with the show-cause hearing and Walker and Simes chose not to participate in the proceeding. As mentioned earlier in this opinion, each of the five petitioners invoked the Fifth Amendment when asked questions by the respondents' attorney, Mr. Waddell.

Because petitioners appeared at the November 12 and 18 hearings without counsel being present during the taking of evidence, the petitioners raised no objections or legal arguments concerning the merits of the case other than those their counsel had raised at pretrial. In fact, except for those arguments raised and ruled on at the November 12 proceeding, some of the issues now raised by the petitioners/appellants are being raised for the first time. Petitioners blame this inadequate and confused record on the

trial court and respondents, and the respondents contend the petitioners were at fault.

What *is* clear in this case is that Mr. Simes was never disqualified, yet, he essentially abandoned his clients at crucial times at both hearings. Our Rule 64(b) of the Arkansas Rules of Civil Procedure provides a lawyer may not withdraw from any proceeding or from representation of any party to a proceeding without permission of the court in which the proceeding is pending. Rule 64(b) further provides as follows:

> Permission to withdraw may be granted for good cause shown if counsel seeking permission presents a motion therefore to the court showing he (1) has taken reasonable steps to avoid foreseeable prejudice to the rights of his client, including giving due notice to his client, allowing time for employment of other counsel; (2) has delivered or stands ready to tender to the client all papers and property to which the client is entitled; and (3) has refunded any unearned fee or part of a fee paid in advance, or stands ready to tender such a refund upon being permitted to withdraw.

Our court has held that provision (b) is aimed at protecting the client's interests and the trial court must look at a motion to withdraw from the point of view of the client, not the attorney. *Jones-Blair Co. v. Hammett*, 326 Ark. 74, 930 S.W.2d 335 (1996). In fact, in *Hammett*, the court held that appellant, Jones-Blair Co., was entitled to a new trial because its attorney was allowed to withdraw from the case in violation of Rule 64(b). 326 Ark. at 79-80. Significantly, the court further held that, in these attorney-withdrawal matters, the trial court must play an active role in determining whether the requirements of Rule 64(b) have been met. *Id.*

We also take note of Rule 64(a), which provides that, when additional counsel is employed to represent any party in a case, that counsel shall immediately cause the clerk to enter his name as attorney of record in the case and then shall notify the court and opposing counsel that he has been employed. Rule 64 was obviously not followed by Mr. Simes, and in these circumstances, he should never have been allowed to withdraw from either the November 12 or November 18 proceedings. As for Mr. Walker, it appears he had never been employed by petitioners, so Rule 64 could be said to be inapplicable to him. By the same token, Mr.

Walker and his concerns over the conduct of the November 18 hearing are of no consequence, since he did not make a proper appearance on the petitioners' behalf.

■ Next, with regard to Mr. Wilson's disqualification and whether he may now challenge the trial court's rulings, we note the record is bereft of any evidence showing he was properly hired by the quorum court, nor does it show he made any motion requesting the trial court to stay the November 12 proceeding so he could file a notice of appeal. The only notice of appeal filed concerning the November 12 order was entered by the quorum court members from the trial court's order, and that notice contained no mention of the trial court's ruling Mr. Wilson disqualified. For these reasons, we hold that any attempt to appeal the trial court's disqualification ruling has not been properly preserved.

We are mindful of the fact that the petitioners had notice that the trial court had ruled at the November 12 hearing that they had the duty to call a special election under Act 1357. They also appeared at the November 18 show-cause hearing with Mr. Simes, even though Simes opined at the hearing that he had a conflict and should be disqualified. In sum, petitioners obviously had some knowledge that they could be without representation at the November 18 hearing. The question arises as to whether petitioners waived their right to counsel in those circumstances or whether they had played some part in having no representation at the hearing.

■ Neither the trial court nor the respondents explored the petitioners' blame regarding their lack of representation, even though such was certainly in order, as we have indicated by our decision in *Hammett*. Because our Rule 64(b) is aimed at protecting the client's interests when deciding if an attorney violated the Rule, thereby prejudicing his clients' rights to a fair trial, we believe error occurred, which requires our remanding of this case for another contempt hearing.[6]

---

[6] We are also aware of the facts and holding in *Diebold v. Myers General Agency, Inc.*, 292 Ark. 456, 731 S.W.2d 183 (1987). There, the court held that Diebold's attorney should not have been permitted to withdraw, but the default judgment against her was not set aside because she had not kept up with her case. Here, the petitioners/appellants obtained counsel and made their required appearances; it certainly has not been shown petitioners/appellants have not been diligent in keeping up with their case.

In remanding this matter, we realize further delay will take place in resolving this matter. Nonetheless, this court is a deliberative body whose function in large part is to review records, consider legal arguments, and determine if error resulted in the trial court proceedings. It is also evident that much of the confusion and delay has ensued from Mr. Simes' failing to comply with Rule 64(b), which failure enures to the advantage of the petitioners, who have collectively voted they do not wish to call a special election. Even so, our concern is in reaching a decision that fairly interprets Act 1357, which is the law that respondents/appellees claim requires the Phillips County Quorum Court to call a special election within a 120-day period. Respondents/appellees are well aware that if they are mistaken in their belief that Amendment 7 does not apply in this case, any special election date the quorum court sets, other than a regular or general election date, would conflict with Amendment 7 provisions, since the Amendment requires county initiated measures to be submitted only at regular elections.[7] Obviously, this Amendment 7 issue bears on whether petitioners/appellants can be held in contempt when that part of the Act could be unconstitutional and any election held under the Act could be a nullity. *See Phillips v. Rothrock*, 194 Ark. 945, 109 S.W.2d 1254 (1937).

We acknowledge the respondents/appellees' argument below and before us now that Amendment 7 is inapplicable. They cite *McFerrin v. Knight, Clerk*, 265 Ark. 658, 580 S.W.2d 463 (1979), to support their argument, and refer to language in *McFerrin* that says Amendment 7 has no application to local-option petitions, which are governed by statute. However, the correlative rule is that, once such local-option petitions are prepared under the provisions of the local-option statutes, and are filed with the county clerk, the subsequent procedure must be governed by Amendment 7. *See Armstrong v. Sturch*, 235 Ark. 571, 361 S.W.2d 77 (1962). Furthermore, this court in *Brown v. Davis*, 226 Ark. 843, 294 S.W.2d 481 (1956), stated the rule more definitively by saying after such petitions are filed with the county clerk, subsequent proceedings thereon shall be had and conducted in the manner provided for

---

[7] Amendment 7 also requires such initiative petitions to be filed not less than sixty days nor more than ninety days before the regular election — which in the instant case made the respondents/appellees' petition premature. Arkansas's next regular election will be in November of 2000.

county initiative measures under Amendment 7 and its enabling acts. *See also Ward v. Boone*, 231 Ark 661, 332 S.W.2d 245 (1960).

In short, it is clear the statement of the law in *McFerrin* relied on by respondents/appellees does not necessarily decide whether the provisions of Act 1357 solely govern the county initiative petition now at issue here. In reversing and remanding this case, for the reasons discussed above, we specifically direct the parties to fully develop and argue this Amendment 7 issue which will permit the trial court the opportunity to rule on the Amendment's applicability, and if it determines the Amendment is applicable, what effect such a holding would have on any contempt proceedings against petitioners/appellants. Meanwhile, this court continues its stay order until the contempt proceeding has been retried and concluded. If the losing parties appeal the trial court's contempt ruling, we will expedite the appeal and have our clerk set an early briefing schedule. Regarding the petitioners' request for a writ of prohibition, the relief is denied since such extraordinary relief is not a substitute for an appeal. *See Gran v. Hale*, 294 Ark. 563, 745 S.W.2d 129 (1988).

Reversed and remanded.

IMBER, J., not participating.