DONALD L. CORBIN, Justice, dissenting. Today’s majority opinion represents another blatant attempt by a majority of the members of this court to reach a desired result without any regard for the resulting consequences. I believe the majority’s decision places the parties and circuit court in an untenable position and, therefore, I must respectfully dissent. It is my opinion that this case is entirely moot based on its specific facts, the issues as presented to this court, and, most notably, the fact that there is a complete lack of time to properly remedy what the majority deems to be error. While I recognize that the parties and 12nthe circuit court acted promptly within the time constraints of the governing statutes, and while I may be somewhat sympathetic to the plight of Our Community, Our Dollars (“OCOD”), I simply cannot ignore the fact that there is no reasonable scenario under which timely relief can be granted and, as a result, the majority opinion is going to throw the electoral process in Saline County into chaos. As the case stands, the circuit court issued an order finding the petition to be insufficient on the basis that it lacked the requisite signatures and that the clerk could not add additional signatures to an insufficient petition to make it sufficient. Based on its findings, the circuit court reversed (he clerk’s certification and ordered the initiative to be removed from the Saline County general election ballot. It further ordered the county election commissioners to not “tabulate, count, or otherwise certify any votes cast on the issue on November 4, 2014.” The circuit court stayed the first part of its order, so the initiative is on the general-election ballot, but the circuit court did not stay the part of its order enjoining the commissioners from counting or certifying any votes cast. OCOD has not requested that this court issue a stay of the injunctive portion of the court’s ruling. In fact, OCOD asks us to reverse the circuit court’s order finding the petition to be insufficient and order the votes cast on the question be counted. The majority grants only part of the requested relief in reversing the circuit court’s finding of insufficiency based on the court’s failure to consider the unprocessed signatures. More specifically, it reverses the circuit court and orders it to perform a “de novo review by determining the sufficiency of the petition, as consistent with this opinion.” |21In so doing, the majority directs the circuit court “to consider the validity of the uncounted 720 signatures.” While this directive is not entirely clear, the majority seems to be suggesting that it is now the circuit court’s responsibility to certify the petition based on these additional signatures. The absurdity of this is mind-boggling. In one fell swoop, the majority, without any authority to support itself, is forcing the circuit court to abdicate its judicial function and usurp the authority of the county clerk who is charged with reviewing signatures and determining sufficiency, all in the guise of conducting a “de novo review.” See Ark.Code Ann. § 3-8-205 (Supp.2013). The county clerk’s July 31, 2014 finding of sufficiency has been set aside. The certification that resulted from that finding is no longer valid, as it is based on a set of numbers that are no longer accurate. In order to comply with Arkansas Code Annotated section 3 — 8—205(b) (Supp.2013), it would seem to me that the circuit court should have to send this matter back to the county clerk for issuance of a new certification, based on the 720 signatures that have never- been formally processed or reported for purposes of determining sufficiency and certifying the petition. The majority chooses to ignore this critical step because it is clear that it is too late for the issuance of any such certification. Pursuant to Arkansas Code Annotated section 14 — 14—915(b)(3) (Repl.2013), all initiative and referendum petitions must be certified sufficient to the county board of election commissioners not less than seventy (70) calendar days prior to a regular general election. Clearly, we are long past that mandatory deadline. See Dean v. Williams, 339 Ark. 439, 6 S.W.3d 89 (1999) (holding that after local-option petitions are filed with the county clerk, subsequent proceedings thereon shall be had ]22and conducted in the manner provided for county initiative measures under Amendment 7 and its enabling acts). For this reason alone, I believe that this case as presented to us is moot. Quite frankly, I believe the majority’s disregard of the obvious time-constraints results from its failure to comprehend the ripple effect of its decision. Even though the majority is operating under the false belief that no new certification is necessary, I still do not believe that there is enough time to remand this matter to the circuit court and definitively settle the case. Even if we assume that the clerk, the circuit court, and the parties act in the most expeditious manner possible upon remand, one side is going to lose before the circuit court and that losing party has the right to bring another appeal before this court. Thus, I simply do not believe that under any reasonable scenario can there be a final resolution of this case before the election, or even before the time when the county board of election commissioners must certify the election results to the Secretary of State. Notwithstanding my concern that this case is moot, I must also point out that I believe the majority’s conclusion that the circuit court erred in refusing to consider the 720 excess signatures is wrong. The majority opines that if it affirmed the circuit court on this point, it “would silence the voices of registered voters who properly affix their names to a petition but whose signatures are deemed unnecessary to count by a county clerk.” While this is a nice sentiment, it ignores two critical facts. First, the majority is assuming, without any evidence to support it, that all 720 of those signatures are valid. Appellees were never given a chance to contest the validity of those signatures, and there has been no finding by the circuit court that the signatures are valid. Second, the majority takes no issue with silencing the voices of 12.qthose persons who were unlucky enough to sign a petition part that was later deemed to have one invalid signature. According to OCOD, the circuit court’s decision to strike all signatures on a petition part with one invalid signature resulted in the improper striking of ninety-two signatures. While I agree with the majority’s conclusion to affirm the circuit court on this point because our law clearly states that the presumption of verity of those signatures was lost, I point to this fact that the signing of a petition does not come with any attendant guarantee of a signor’s voice being heard. While I recognize that the initiative process reserved to the people is an important one, it is also a process that must adhere to applicable statutory and constitutional requirements. As I stated, I have some sympathy for the plight of OCOD because of the county clerk’s failure to review and certify all signatures submitted, but I cannot ignore the fact that OCOD, as sponsor, bore the burden of presenting ample signatures in the first instance, knowing well the likelihood of a large percentage of those signatures being invalidated upon review. Moreover, the predicament caused by the clerk’s failure to count and certify all signatures presented is a legislative problem that requires intervention by the General Assembly, not this court. For the reasons stated herein, I respectfully dissent. HANNAH, C.J., and DANIELSON, J., join in this dissent.